In the Matter of the Estate of HARRIET P. JAMES, Deceased.

Surrogate's Court, New York County, February 1, 1943.

*William L. Ransom, William G. Chambers* and *Archibald H. Cashion* for United States Trust Company of New York, as executor and trustee, petitioner.

*Reese D. Alsop* for Maude P. Larson, respondent.

*James L. Skerritt* for Harriet F. Manice and others, respondents.

*Francis K. Decker* for Julie M. Sheffield, respondent.

*William De Forest Manice* for William D. Manice, Jr., and others, respondents.

*John L. Buckley,* special guardian.

FOLEY, S. The principal question in this accounting proceeding of the executor and trustee involves the construction of the will and specifically whether the testatrix directed in it that the Federal and New York State estate taxes should be paid out of the residuary estate or apportioned equitably against the shares of the beneficiaries pursuant to section 124 of the Decedent Estate Law. The Surrogate holds that no apportionment was intended and that on the contrary the testamentary plan called for the payment of such taxes out of the residuary estate. These conclusions as to intent are supported by the consideration of the entire terms of the will.

Mrs. James was the wife of Arthur Curtiss James, who died

shortly after her. He left a very large fortune, accumulated in mining, banking and railroad enterprises.

In the first paragraph is the mandate: "I direct payment of my debts and expenses of administration, and also of all taxes upon the legacies and devises herein." The grouping of the estate taxes with debts and administration expenses, which are ordinarily payable out of the general estate, is significant of the purpose of the testatrix to charge the taxes similarly. In *Matter of Weeks* (N. Y. L. J., March 12, 1941, p. 1121) a clause of substantially the same import was involved in the construction of the will considered and decided by me. There, the material paragraph read: "*First:* I direct my executors hereinafter named to pay as soon as conveniently may be done after my death all my just debts; taxes funeral and testamentary expenses." In that proceeding there were, as in the pending proceeding, other provisions of the will which, when interpreted with the clause just quoted, gave evidence of the intention of the testatrix that the estate taxes be paid out of the general estate and without apportionment.

In the pending proceeding there are other related provisions of the will and benefits created for nearer relations and faithful employees which, when read with the first clause, reveal a similar purpose for a charging of the taxes out of the general estate.

Mrs. James left to her husband by specific bequest a motor boat and other personal property. In another paragraph of the will she gave to her husband and to a sister her jewelry and other personal effects with a precatory request that they distribute them to her sisters, nieces and friends. She devised certain real property in Massachusetts to the issue of another sister for life with remainder to a charitable institution. She made pecuniary bequests in substantial amounts to her sister, Mrs. Ferry, and to her niece, Harriet F. Manice, with a direction as to each legacy that it "be paid to her as soon as may be after my death."

Even more significant are two gifts in two separate trusts of $500,000 each for the benefit for life of her sisters, Mary P. Davidson and Maude P. Larson, respectively, with remainders to certain designated persons. In these gifts contained in paragraphs eighth and ninth of the will the language used is illuminative of a purpose to create these benefits in the full amount of the fund and undiminished by the apportionment and charge of any estate taxes. In each case the gift of the trust fund was to her executors in "the sum of Five

Hundred Thousand Dollars ($500,000), *or property which they may value at that amount,* such valuation, when made by a majority of my executors to be conclusive for all purposes; * * *." (Italics mine.) The direction to set aside securities in the fixed amount precludes an inference that taxes were to be deducted.

Each of the legacies in separate paragraphs for the benefit of her three secretaries and her housekeeper contains the significant direction that payment should be made to these legatees " as soon as may be after my death." Certainly there is no indication of purpose that payment should be deferred until the taxes were finally assessed after a period of two or three years or, more important, that these legacies should be burdened with any share of such taxes.

Finally, the gift of the residue is to charities concerning which there is no indication of preference over her nearer relations who plainly were the primary objects of her bounty. There were subordinate provisions for the disposition of a balance of the residue if any remained after the charitable bequests which the testatrix must have believed were remote possibilities. In the light of the occurrences these possibilities have become actualities because the estate assets are insufficient to carry them into effect.

Under this clearly revealed testamentary plan, the Surrogate therefore holds that the taxes must be paid out of the general and residuary estate without apportionment and that the testatrix by express direction in her will, under the provisions of section 124 of the Decedent Estate Law, stipulated against apportionment.

The executor has also requested a construction of the will of the decedent and has asked determination of the persons entitled to the payment of the legacy of $100,000 under paragraphs eighth and sixteenth.

In the eighth paragraph of her will the decedent created a trust in the sum of $500,000 with directions to pay the net income thereof to her sister Mary P. Davidson during her life and " upon her death to pay One Hundred Thousand Dollars ($100,000) from the principal thereof to such person or persons, or to such institutions, as my said sister, Mary P. Davidson, may by her Last Will elect, or in the absence of such election, as a part of her estate, in the manner that may then be directed by the laws of the State of New York for the distribution of personal estates of persons dying intestate; * * *." The balance of the corpus of the trust was directed to be paid to certain named beneficiaries.

A further and important provision relating to this legacy is contained in the sixteenth paragraph of the will in the following language: "If either of the *life beneficiaries* of the trusts created under paragraphs eighth and ninth of this Will shall predecease me, then the property which would otherwise have constituted such trust fund shall immediately go to the remaindermen, subdividing any such respective trust fund in the same proportions and in the same amounts *as if such beneficiary had survived me.*" (Italics mine.) The trust created under the ninth paragraph was for the benefit of another sister and is similar in its provisions to the trust under the eighth paragraph.

Mary P. Davidson predeceased the testatrix. The sequence of dates is: date of Mrs. James' will, July 18, 1931; date of her sister's will, November 10, 1933; date of her sister's death, February 12, 1936; date of Mrs. James' death, May 15, 1941. In the will of the sister she gave her residuary estate to her husband, David W. Davidson. Her will was silent as to the exercise of any power of appointment. It has been established that all claims against her estate have been discharged and all legacies paid in full. Any further property passing pursuant to the terms of her will would, therefore, go to her residuary legatee.

The Surrogate holds that it was the manifest intention of the testatrix to bequeath the legacy of $100,000 to David W. Davidson, the person identified by the will of Mary P. Davidson as the recipient of the legacy.

It is an elementary principle of law that a power of appointment created by will lapses if the donee of the power dies before the donor. (*Matter of Fowles,* 222 N. Y. 222, 230; *Matter of Piffard,* 111 N. Y. 410, 414; Restatement, Law of Property, § 348.) "That is because a will has no effect till the death of the testator. Whatever power it creates, comes into being at that time." (*Matter of Fowles, supra.*)

The determination that the power of appointment, as such, had lapsed does not mean, however, that the will of Mary P. Davidson could not effect a disposition of the decedent's property by other means. There still remains the question whether or not it was the decedent's purpose and intention, under paragraph sixteenth quoted above, to make a gift of that property directly to the persons named in her sister's will even though her sister had predeceased her. (*Matter of Fowles, supra; Matter of Piffard, supra; Matter of Greenwood* [1912] 1 Ch. D. 392; *Condit* v. *De Hart,* 62 N. J. L. 78; Restatement, Law of Property, § 348, comment.) In such a case, the will of Mary

Davidson is referred to " not as transferring the property by an appointment, but to define and make certain the persons to whom and the proportions in which " the property shall pass by the will of the testatrix in case of the death of her sister during her lifetime. (*Matter of Piffard, supra; Matter of Fowles, supra.*)

When the principle enunciated in the above decisions is applied to the will of Mrs. James, it becomes clear under the saving and substitutional clause contained in paragraph sixteenth that David W. Davidson is entitled to receive the legacy of $100,000. An analysis of the will makes it evident that such was the purpose and intent of the testatrix.

The possibility of her sister's death prior to her own was foreseen by the testatrix and carefully provided for in the sixteenth paragraph. By combining these two paragraphs of the will, the plan of the testatrix may be paraphrased as if she said: If my sister survives me and dies leaving a will the legacy is to be paid to her legatees or appointees, but if she leaves no will, then it is to go, " as a part of her estate," to her statutory distributees. If my sister shall predecease me and dies testate, then the legacy shall go to the same persons who would be entitled to take it as if she " had survived me." If, on the other hand, she predeceases me but dies intestate, then it shall be payable to those persons who would be her statutory distributees if she " had survived me."

The will of Mary P. Davidson may be examined and applied to identify the person to whom Mrs. James gave the substitutionary gift. A testator may " provide that if a legacy to A shall lapse it shall go to the persons who would have taken the benefit of it on the hypothesis that the legatee survived the testator and died immediately afterwards, or died intestate immediately afterwards, or that the testator's death occurred immediately before the death of the legatee. In any of those cases the persons to take could be readily ascertained, though they might not be the same persons in each case, and it must be remembered that in every case the persons to take will take under the testator's will and not under the will or intestacy of the legatee * * *." (PARKER, J., *Matter of Greenwood* [1912] 1 Ch. D. 392.)

The executor is therefore directed to pay the legacy of $100,000 to David W. Davidson.

[Other directions included in the original decision of the Surrogate omitted because of their subordinate importance.]

Submit decree on notice construing the will and settling the account accordingly.