DONALD S. CARUTHERS AND DONALD P. WRIGHT,
PERSONAL REPRESENTATIVES OF THE
ESTATE OF JOSEPH D. BUSCHER
*v.* EARL BUSCHER

[No. 616, September Term, 1977.]

*Decided February 10, 1978.*

The cause was argued before MELVIN, WILNER and COUCH, JJ.

*Arthur C. Elgin, Jr.,* with whom were *Arthur C. Elgin* and *Jackson, Campbell & Parkinson* on the brief, for appellants.

*Albert E. Brault,* with whom were *Brault, Graham, Scott & Brault* on the brief, for appellee.

WILNER, J., delivered the opinion of the Court.

This is an appeal by the Personal Representatives of the late Joseph D. Buscher from the sustaining of exceptions to their Second Account by the Circuit Court for Montgomery County, sitting as an orphans' court. The issue is whether the Personal Representatives were authorized to make payments on the mortgage that encumbers the property 2112 Firethorn Road. To resolve it, we must construe Mr. Buscher's Will, and, in light of that construction, consider the relationship between two sections of the Estates and Trusts article — § 4-406, dealing with "exoneration", and § 7-401, describing the authority of personal representatives.

# I. BACKGROUND

Joseph D. Buscher was a distinguished Maryland attorney. He died on July 8, 1975, a resident of Montgomery County, leaving a Will dated June 2, 1975. The pertinent provisions of that Will are as follows:

(1) Paragraph FIRST directs the personal representatives, among other things, "to pay out of my estate all of my just debts."

(2) Paragraph SECOND, captioned "Special Bequests, Intentions and Testator's Declaration of Policy", contains a number of specific gifts to friends and relatives. Subparagraph (g) disposes of Mr. Buscher's interest in two condominium units in Florida. It provides:

> "I give, devise and bequeath, in fee simple, my interest in condominium unit No. A-8 located in Chateau Belleair, 2205 Belleair Road, Clearwater, Florida, including all of my personal property therein, to DONALD P. WRIGHT, *subject to his assuming the encumbrance thereon.* I also give, devise and bequeath my one-half interest in condominium unit No. B-12 located in said Chateau Belleair, in fee simple, to DONALD P. WRIGHT, who is the owner of the other one-half interest. If said DONALD P. WRIGHT should predecease me, then all of my interest in condominium unit B-12 shall vest, in fee simple, to MRS. DOLOROS V. WRIGHT, her heirs and assigns." (Emphasis supplied.)

Subparagraph (i) disposes of the property at issue here. It provides:

> "My real property and improvements thereon located at and known as 2112 Firethorn Road, Middle River, Baltimore County, Maryland, I give and devise, in fee simple, to MRS. DOLOROS V. WRIGHT and her son, DONALD P. WRIGHT, or the survivor of them." [1]

---

1. Doloros V. Wright assigned all of her interest in this devise to her son, Donald. He is therefore the sole devisee.

(3) Paragraph TENTH divides the residue of the estate (after a number of other specific bequests in paragraphs SEVENTH, EIGHTH, and NINTH) equally among Mr. Buscher's brothers and sisters, one of whom is appellee, Earl Buscher.

(4) The last paragraph designates appellants Donald S. Caruthers and Donald P. Wright as personal representatives.

The bulk of Mr. Buscher's estate consists of improved real estate, all of which is encumbered. In addition to the interests in the two Florida condominium units, there are four properties in Baltimore City, two (including 2112 Firethorn Road) in Baltimore County, and one in Montgomery County. Of all of this, only the two condominium units and 2112 Firethorn Road are the subject of specific devise; the rest fall into the residuary estate. The encumbrances on the three properties specifically devised were in existence prior to June 2, 1975 — the date of the will.

In the course of their administration of the estate, Messrs. Caruthers and Wright filed a First Account, in which they acknowledged certain disbursements for 2112 Firethorn Road, part of which consisted of payments on the mortgage; however, no exceptions were filed to that account. On January 19, 1977, they filed their Second Account. This showed, as to 2112 Firethorn Road, income from July 8, 1976 through January 7, 1977, of $1,680, and expenses, for the same period of $2,745. On March 4, 1977, Earl Buscher filed exceptions to the Second Account,[2] objecting to the allowance

---

2. We here take notice of a gap in both the record and the Code. The certificate of mailing, attached to the Second Account, shows that on January 18, 1977, the account was filed with the Register of Wills of Montgomery County, and a copy of it was mailed to all interested persons. The account is stamped "Received" by the Register on January 19, 1977. Estates and Trusts article, § 7-301 requires a personal representative to file written accounts "in the manner prescribed *in this subtitle*" (emphasis supplied). Nothing in subtitle 3, however, states *where* these accounts are to be filed. Section 7-501 (a) implies that the account is to be filed "with the court", the word "court" meaning, in Montgomery County, the Circuit Court sitting as an orphans' court, and not the register. *See* § 2-101. An even more significant question than where to file the account arises from § 7-501 (b). This requires that exceptions to an account be filed with the register "within 20 days of the approval of the account by the court." The problem is that (1) nowhere in the Code is there any requirement that an interim account be approved by the court, although the Attorney General has inferred such a requirement (*see* 57 Op.Atty.Gen. 566 (1972)), and (2) assuming that such a requirement

for expenses incurred with respect to 2112 Firethorn Road. Pointing out that the devisee of that property, Mr. Wright, was also a "co-executor", the exceptant "suggested that to charge these disbursements to the estate which benefits the co-executor is a violation of his fiduciary obligations to the residuary beneficiaries." He therefore requested that those disbursements be disallowed "to the extent that they exceed the receipts which are included among the assets of said estate."

The Second Account, as noted, did not specify the disbursements made on account of the property, but showed only total income and total expenses, resulting in an excess of disbursements over income of $1,065. At the hearing on the exceptions, somehow the allowances made on the First Account were considered along with those on the Second Account, even though the exceptions clearly related only to the Second Account.[3] Apparently, in the First Account, the personal representatives reported income of $2,756 and disbursements of $1,922, producing a surplus of $834. Taking the two accounts together, the net deficit is only $231.

The court sustained the exceptions to the Second Account to the extent of the payments of principal and interest on the mortgage (for which allowance was sought in that account) and overruled all others.[4] We are advised that of the allowances sought in the Second Account with respect to 2112 Firethorn Road, $627 was for payments on the mortgage. In furtherance of its decision, the court directed the personal

exists, there is no statutory or other direction as to how *or when* this approval is to take place. The time for filing exceptions is pegged to court approval of the account; and yet, not only is this base point entirely open-ended, but there is no provision for notice to anyone as to when (or if) it has occurred. The record in this case gives no indication that the Second Account was approved prior to the filing of the exceptions, and thus, presumably, the exceptions were timely filed.

3. The court discussed with counsel the question of whether exceptant had waived his right to object to allowances included on the First Account, but did not decide the matter. Section 7-501 (b) was not discussed, and indeed the record does not indicate whether (or when) the First Account was approved. The court raised the interesting question of whether any of these objections could be raised in the form of exceptions to the final account. If so, § 7-501 (b) would be meaningless. That question is not now before us, however, and we therefore do not decide it.

4. The other disbursements were for repairs and maintenance.

representatives to reimburse the estate for the amount of those mortgage payments, and enjoined them from making any further such payments. The personal representatives have appealed from both aspects of the order, asserting that (1) they were not wrong in making the mortgage payments, and (2) in any event, if there is to be reimbursement, it should come from Mr. Wright as devisee of the property and not from Wright and Caruthers as personal representatives.

## II. EXONERATION

Until 1969, Maryland followed the common law with respect to exoneration. At common law, the personal estate of a testator was the natural and primary fund for the payment of debts. This meant that, even when real estate was expressly charged with the payment of a debt (*e.g.,* subject to a mortgage), no resort could be had to the realty for the payment of the debt unless and until the personalty was exhausted. Thus, absent exoneration by the testator (exoneration of the *personalty*), an encumbrance on real estate would be paid from the personalty in the estate; and, to the extent the personalty was sufficient, the real estate would pass free of the encumbrance. All of this was explained by the Court of Appeals in *Tobiason v. Machen Exec.,* 217 Md. 207 (1958).

Exoneration, the Court said, may be accomplished "by the express terms of the will or by reasonable and satisfactory implication therefrom." It is clear from *Tobiason,* however, that the phrase "reasonable and satisfactory implication" was to be narrowly construed. Quoting from *Miller, Construction of Wills,* § 387, the Court noted that "very clear expressions are required in order to fasten the incumbrance on the property", and that a devise of real estate "subject to a mortgage" was not a sufficiently clear expression.[5] The doctrine was firmly imbedded in the law, and a testator is "presumed to have known the law, as it existed when he made his will and that he made his will in reference to it; that is to say, both the common law and the statutory law, including

5. *Cf.* Stieff v. Millikin, 162 Md. 245 (1932).

the interpretation which the latter would receive from the courts."

Finally, the Court observed that it was not unmindful of the fact that the common law doctrine of exoneration was not considered a popular one, but that it was so well established that, if it were to be changed, the Legislature would have to change it. Despite this invitation by the Court of Appeals, joined in by the Maryland Law Review several months later,[6] no effort was made to enact legislation abrogating or modifying the common law rule until 1969.

In late 1968, the Second Report of the Governor's Commission to Review and Revise the Testamentary Law of Maryland (generally known as the "Henderson Commission", after its Chairman, retired Chief Judge William L. Henderson) was presented to the General Assembly. Attached to the Report — indeed, comprising the Report — was draft legislation to rewrite entirely the testamentary law of the State, then codified primarily in Article 93 of the Code, along with the Commission Comments explaining each section of the proposed new law. The Commission accepted the Court's ten-year old invitation, and recommended a substantial modification of the common law doctrine of exoneration. This appeared as proposed § 4-406, which was adopted by the General Assembly without change. With but minor style changes, it now appears as § 4-406 of the Estates and Trusts article, as follows:

"*Unless a contrary intent is expressly indicated in the will,* a legacy of specific property shall pass subject to a security interest or lien on the property which existed at the time of execution of the will or which is a renewal, extension, or refinancing. If a security interest or lien is created or attaches initially after the execution of the will, the legatee is entitled to exoneration." (Emphasis supplied.)

Since the mortgage in question existed prior to the execution of the Will, Mr. Wright is not absolutely entitled

---

6. *See* casenote appearing in 19 Md.L.Rev. 247 (1959).

to exoneration. The question, therefore, is whether a
"contrary intent" — *i.e.,* an intent to exonerate the real estate
— "is expressly indicated"? What quantum of evidence must
appear in the Will in order to establish the contrary intent?
To answer this, the parties would have us searching through
assorted dictionaries, Words and Phrases, and various cases
in which one or the other of these words — "expressly" or
"indicated" — have been used or defined. This does not
appear to be necessary, as there are sufficient guides within
the Estates and Trusts article itself from which we may glean
the legislative intent.

Section 1-210 (d) of the article establishes certain rules for
the distribution of shares *per stirpes,* "unless a contrary
intention expressly appears" in the will. In *Sollers v.
Merc.-Safe Dep. & Trust,* 262 Md. 606 (1971), the Court twice
viewed the quoted phrase as meaning "in the absence of a
clear expression of contrary intention". 262 Md. at 610. The
expression of the contrary intention, under that language,
must therefore be "clear".

The very words at issue here — "expressly indicated" —
appear numerous times throughout the article, in essentially
the same context as they appear in § 4-406.[7] One of the more
significant is § 4-405, which deals with what happens when,
after the execution of a will, changes occur with respect to
securities that are the subject of a specific legacy under the
will. It provides:

> "*Unless a contrary intent is expressly indicated in
> the will,* if securities are the subject of a specific
> legacy and after the execution of the will other
> securities of the same or another entity are
> distributed to the testator because of his ownership
> of the original securities, whether as a result
> of a partial liquidation, stock dividend, stock
> split, merger, consolidation, reorganization,
> recapitalization, redemption, exchange, or other

---

**7.** *See, for example,* §§ 4-403, 4-404 (a), 4-405, 4-407, 4-408, 4-410, 8-102. The
term is becoming a popular one. *See* Real Property article, § 2-113; also art.
43, § 273A (the generic drug law), where, in 1977, the General Assembly
substituted the words "expressly indicates" for "explicitly states".

transaction, and if these securities are part of the estate of the testator at his death, the specific legacy includes the additional or substituted securities." (Emphasis supplied.)

The Comment to this section, drafted by the Henderson Commission and adopted by the General Assembly, is as follows:

"Under prior Maryland law shares of stock received by a testator as a dividend after execution of a will did not pass to the specific legatee of the original stock. Hicks v. Kerr, 132 Md. 693, 104 A. 426 (1918). Consistent with the notion of having all provisions of a will speak as of the date of the testator's death, *unless a contrary intention expressly appears,* the new statute adopts this notion with respect to stock dividends received by the testator between the time of execution of the will and the time of his death. *The word 'expressly' has been added near the end of the sentence to indicate that such determination should not be left to the sometimes elusive reasoning which has characterized quests for the 'testator's intention' in the courts.* See Sykes, § 86." (Emphasis supplied.) [8]

This Comment, though obviously not part of the statute itself, is nevertheless highly significant in that, first, it equates the words "expressly indicated" with "expressly appears", thereby making relevant the Court's view of the latter expression in *Sollers,* and second, it focuses on the word "expressly" as indicative of an intent not to leave the determination "to the sometimes elusive reasoning which has characterized quests for the 'testator's intention' in the courts."

A further interpretative guide appears with respect to

---

8. The statement that the word "expressly" was added "near the end of the sentence" is obviously in error. The word appears only once in the section, near the beginning, as an adverb modifying the predicate adjective "indicated".

§ 4-407, dealing with the exercise of a power of appointment. That section provides:

> "Subject to the terms of the instrument creating the power, a residuary clause in a will exercises a power of appointment held by the testator only if:
>
> (1) An intent to exercise the power *is expressly indicated in the will;* or
>
> (2) The instrument creating the power of appointment fails to provide for disposition of the subject matter of the power upon its nonexercise." (Emphasis supplied.)

The Comment to that section states, in relevant part:

> "To satisfy the phrase 'expressly indicated' in clause (i) of § 4-407 [ET, § 4-407 (i)] it is not intended that the particular source of the power, i.e., 'under my father's will' must be identified. It is intended that such language as 'All of the rest of my estate and property, *including all property over which I may have any power of appointment,* I give, devise and bequeath to' etc., will fully exercise any power, whether general or special, held by the testator whose terms of exercise are consistent with the language used in such testamentary disposition." (Emphasis supplied.)

Here again is a clear indication that, although the source of the power need not be stated, a specific statement of the intent to exercise the power (*i.e.,* the "contrary intent") is required.

What emerges from all of this is that, by using the words "expressly indicated", and tacitly accepting the interpretations of that phrase provided in the Comments, the General Assembly desired that the intent to exonerate the specific realty be clearly stated in the will, and that it not arise or be presumed by implication. The intent must be stated clearly, expressly, and specifically in the will, so that a court

need not be put to the burden of engaging in that "sometimes elusive reasoning" to ferret it out.[9]

This becomes all the more clear when one considers the underlying purpose of § 4-406. Under the common law, as explained in *Tobiason,* "very clear expressions" were required in order to exonerate the personalty. There is no reason to suppose (and no evidence to support) that, in deciding to exonerate the personalty rather than the realty, as a matter of law, the General Assembly would have desired its will to be thwarted by anything less than the same "very clear expressions".

The Will of Joseph D. Buscher does not suffice to so express that contrary intent. There is no expression of exoneration at all in Paragraph SECOND (i) — the clause in which the specific devise of 2112 Firethorn Road is made. At

---

9. It is interesting to note that, despite its frequent appearance, the phrase in question was not the exclusive term used by the General Assembly in this context. In other sections of the article, the General Assembly required certain rules or procedures to be followed unless "otherwise provided" in the will [§§ 4-105 (d), 4-411 (c), 6-204, 7-304, 9-102], or unless the language of the will "manifests an intent" [§ 4-107], or the will does not provide otherwise "expressly or by necessary implication" [§ 4-105 (a)]. Conversely, however, some sections require the will to "expressly state" a contrary intent [§ 3-301 (b) (4)], or that such intent be "specifically provided" [§ 3-208 (b)]. Thus, a comparison of terms, in pursuance of the maxim that "if the Legislature wanted such and such it could have said so as it did elsewhere" is not of much assistance here. Neither are we helped by what other States have done. Although a number of States have modified the common law doctrine with statutes similar to § 4-406, it does not appear that any of them have used the words "expressly indicated" to denote the criterion for establishing the contrary intent. *See* Annotation, Right of Heir or Devisee to Have Realty Exonerated From Lien Thereon At Expense of Personal Estate, 4 A.L.R.3d 1023, 1049-1057. By way of example, The Model Probate Code, § 189, provides that a specific devisee of realty takes subject to the mortgage unless "the will provides expressly or by necessary implication that such mortgage be otherwise paid." The Uniform Probate Code, § 2-609, provides simply that "a specific devise passes subject to any mortgage interest existing at the date of death, without right of exoneration, regardless of a general directive in the will to pay debts." A Comment to § 3-814 of the Uniform Probate Code, which is the counterpart to Estates and Trusts article, § 7-401 (q), notes, with respect to § 2-609 that "unless the will indicates to the contrary", a specific devisee of mortgaged property takes subject to the lien. The Massachusetts statute, Ch. 191, § 23, Annot. Laws of Mass., requires that the contrary (*i.e.,* exoneration of the realty) "shall plainly appear by his will". The New York statute, Estates, Powers and Trusts Law, § 3-3.6, follows the Model Probate Code, and requires that the testator have "expressly or by necessary implication indicated otherwise." New Jersey requires the will to "expressly or impliedly direct" that the mortgage be paid from the personalty (§ 3A:26-1, N.J. Stat. Annot.).

best, an intent to exonerate that property may be inferred either (1) from the general direction to the personal representatives to pay "all of my just debts", of which the mortgage in question would presumably be one, or (2) from the distinction between the specific devise of one of the Florida condominium units in Paragraph SECOND (g), subject to the devisee (also Mr. Wright) assuming the existing encumbrance on it, and the omission of that condition in the devise of 2112 Firethorn Road. Neither of these, nor the two together, however, constitute a clear expression of exoneration with respect to the particular property in question.[10] We may speculate as to what Mr. Buscher intended — whether he was actually (as opposed to presumably) aware of § 4-406, why he inserted the condition with respect to one piece of property but not as to any of the others, whether he considered the general direction to pay his debts as applying to this or any of the other mortgages — but that is not what the statute permits. If a particular piece of realty is to be exonerated, the Will must make expressly clear that that piece of realty is, indeed, to be exonerated. Otherwise, it is not exonerated.

## III. LIABILITY OF PERSONAL REPRESENTATIVES

The fact that the property in question was not entitled to be exonerated — that the mortgage is not to be paid from the personalty of the estate — does not necessarily mean that the personal representatives were wrong in making payments on the mortgage, or that they should be required to reimburse the estate.

Section 7-401 (a) provides that, in the performance of his duties, a personal representative may "exercise all of the power or authority conferred upon him by statute or in the will, without application to, the approval of, or ratification by

---

**10.** *See* Fidelity Union Trust Co. v. Laise, 60 A. 2d 250 (N.J., 1948) holding specifically that a general direction to executors to pay debts does not suffice to exonerate real estate subject to a mortgage. *See also* In re Fogarty's Estate, 300 N.Y.S. 231, 237 (1937); and In re Cloninger's Estate, 112 P. 2d 139 (Wash., 1941). But *cf.* Succession of Waterman, 298 So. 2d 731 (La., 1974), reaching a contrary result which we decline to follow.

the court." One of the statutory powers is contained in § 7-401 (q), as follows:

> "If assets of the estate are encumbered by a
> mortgage ... and if it appears to be in the best
> interests of the estate, he [the personal
> representative] may pay the encumbrance, or convey
> or transfer the assets to the creditor in satisfaction
> of his security interest, in whole or in part, whether
> or not the holder of the encumbrance has filed a
> claim."

In this context, of course, the general direction to pay all just debts is relevant both as a direct authority in the will to make the mortgage payments and as a clear indication that the statutory power in § 7-401 (q) is not "validly limited by the will." [11]

It is apparent from the Comments to §§ 7-401 and 4-406 that the General Assembly desired those two sections to be read together, harmoniously. A Comment to § 7-401 (q) states that the intent of that section is "merely to grant the powers therein set forth, but not to affect the substantive provisions of § 4-406." The Comment to § 4-406 states, in part:

> "Under § 7-401 (s) [ET, § 7-401 (q)] the personal
> representative may discharge any encumbrance or
> security interest. If he does so, the legatee may be
> required to reimburse the estate therefor if,
> pursuant to § 4-406, there is no exoneration."

There is no allegation here, and certainly no evidence in the record to show, that the payments heretofore made on the mortgage by the personal representatives were not in the best interests of the estate. Indeed, at oral argument, appellee conceded that his only interest was in seeking reimbursement to the estate, and that such reimbursement should come from Mr. Wright as the devisee of the property, rather than from the personal representatives. Reading §§ 7-401 (q) and 4-406 together, and especially in light of the

---

11. *See* § 7-401 (a).

674

explanatory Comment to § 4-406, we believe this would be the appropriate relief.

As the personal representatives were authorized to make the mortgage payments under § 7-401 (a) and (q), notwithstanding the lack of exoneration of the realty, the exceptions to the allowance of those disbursements should have been overruled, without prejudice, of course, to whatever rights the exceptant or the personal representatives may have to seek reimbursement from Mr. Wright as specific devisee. We express no opinion as to whether, or to what extent, the "best interests of the estate" would continue to be served by any further payments on the mortgage, this being a matter for the personal representatives, and on review the Circuit Court, to determine.

> *Order sustaining exceptions to second account reversed; case remanded for entry of an order in conformity with this opinion; appellee to pay the costs.*