JULE ABNER JOHNSON, Pers. Rep. of the
Estate of Catherine W. Johnson
*v.* W. LUTHER HALL and
JAMES M. BACOS

[No. 1, September Term, 1978.]

*Decided November 1, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ■LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*Alexander Breuer* for appellant.

*Paul H. Mannes,* with whom was *Philip M. Glick* on the brief, for W. Luther Hall, one of appellees. *Theodore Kligman* for James M. Bacos, other appellee.

DIGGES, J., delivered the opinion of the Court. MURPHY, C. J., dissents and filed a dissenting opinion at page 657 *infra.*

Confronting us in this case is the task of finding a final resting place for the federal estate tax obligation which was

assessed on the worldly goods owned at the time of her death by Catherine W. Johnson, M.D., of Fort Foote, Prince George's County, Maryland. The orphans' court of that county concluded that the federal estate tax should be apportioned among the beneficiaries named in Dr. Johnson's last will and testament; however, the Court of Special Appeals reversed and placed the entire burden of this tax upon the residuary legatee. *Hall v. Johnson,* 38 Md. App. 589, 382 A. 2d 332 (1978). We granted certiorari and now reverse the judgment rendered by the Court of Special Appeals.

Upon her death in 1973, Dr. Johnson left a gross estate slightly in excess of one-half million dollars which, by her will, she divided among her close relatives and friends. After making a number of specific bequests, she left the residue of her estate in trust for the benefit of her son, Carman, who had a, history of recurring mental illness. Among these specific bequests were gifts of stock to Dr. W. Luther Hall and Dr. James M. Bacos, the respondents here, both of whom, the will indicates, had attended Dr. Johnson as her personal physicians.[1] The will was admitted to probate in December 1973 with another son of the testatrix, Jule Abner Johnson, who is the petitioner here, being named as personal representative. In January of 1977, preparatory to making a final accounting and distribution, the personal representative

---

1. The bequests to the doctors are contained in the third clause of the will which provides:

> I hereby give and bequeath the following sums to the following named persons, in grateful appreciation of their kindness to me and to my family, each gift and bequest being subject to the condition that the beneficiary survive me:
>
> * * *
>
> (H) to my kind and competent physician, DR. W. LUTHER HALL, 6000 Wisconsin Avenue, Bethesda, Maryland, or, if he predeceases me, then to his wife, ELIZABETH HALL, or, if they predecease me, then in equal shares to such of their children as survive me, One Hundred (100) shares of common stock of Marriott Corporation and Eight Hundred (800) shares of common stock of Emerson Electric Co.
>
> * * *
>
> (J) To DR. JAMES M. BACOS, 416 Kimblewick Drive, Silver Spring, Maryland, in appreciation of his kind and competent medical care, Four Hundred (400) shares of common stock of Emerson Electric Co.

sought the approval of the orphans' court to apportion the federal estate taxes on a pro rata basis among all the beneficiaries.[2] The two physicians opposed apportionment on the ground that the will directed payment of these taxes from the residuary estate.[3] It is the resolution of this dispute to which we now turn our attention.

We begin by noting that, except in instances when life insurance proceeds pass directly to the beneficiary and in cases when property subject to a general power of appointment is devised, the burden of paying federal estate taxes, because of the absence of any federal statute regulating the subject, is determined by reference to state law. *Riggs v. del Drago*, 317 U. S. 95, 97-98, 101-02, 63 S. Ct. 109, 87 L. Ed. 106 (1942); *see* I.R.C. §§ 2206-07. Historically, estate taxes were viewed, like any other transfer tax or administrative expense, as being part of the cost of administration and, absent an expression of intent in the will to the contrary, payable from the residuary portion of the estate. Scoles & Stephens, *The Proposed Uniform Estate Tax Apportionment Act,* 43 Minn. L. Rev. 907, 915 (1959). The inequity which frequently resulted from the application of this "common law" rule, especially when the residue was left to sustain a widow or minor children, spurred many state legislatures to revise that rule through statutory enactment. *Id.* These statutes, the first of which was adopted in New York in 1930, usually provide that, in the absence of an expression of intent in the will to the contrary, federal and state estate taxes are to be apportioned among the beneficiaries in proportion to the value of the gifts they receive.[4] *Id.* Maryland adopted its first

---

2. As the Court of Special Appeals noted in its opinion, the seeds of the present litigation may have been planted when testatrix's husband and daughter instituted a caveat proceeding to have both the doctors' bequests declared void as being the result of undue influence. Hall v. Johnson, 38 Md. App. 589, 591, 382 A. 2d 332, 333 (1978). The physicians and the decedent's family eventually reached a settlement whereby the doctors agreed to have their legacies reduced by fifteen percent. *Id.* n. 2.

3. The record shows that the value of Dr. Hall's legacy is $28,873.44, with a resulting tax burden of approximately $5,800, while Dr. Bacos' legacy is valued at $13,642.50, requiring the payment of a tax slightly in excess of $2,700.

4. One commentator who recently surveyed the law of the 50 states and the District of Columbia found that, when the will is silent as to the testator's intent, 29 jurisdictions apportion all estate taxes, 8 apply apportionment only

apportionment statute by the enactment of chapter 546 of the 1937 Laws of Maryland. This early law was substantially revised by chapter 156 of the 1947 Laws, which, in turn, was replaced in 1965 with a new enactment that largely tracks the 1964 revision of the Uniform Estate Tax Apportionment Act.[5] This statute is now codified as Md. Code (1974), § 11-109 of the Estates and Trusts Article and in pertinent part provides: [6]

> (b) *Persons among whom tax to be apportioned.* — The [federal and Maryland estate taxes] shall be apportioned among all persons interested in the estate. The apportionment shall be made in the proportion that the value of the interest of each person interested in the estate bears to the total value of the interests of all persons interested in the estate.
>
> * * *
>
> (k) *Applicability.* — Except as otherwise provided in the will, or other controlling instrument, the provisions of this section shall apply to the apportionment of, and contribution to, the federal and Maryland estate taxes.

It is evident from a reading of subsection (k) of the act that the application of the rule of apportionment set out in subsection (b) is mandatory, unless the will evinces an expression of intent to the contrary. This enactment, therefore, is in harmony with the firmly established rule that,

to nonprobate assets, and 14 still follow the common law rule and place the burden of estate taxes upon the residue. Minan, *The Allocation of Estate Taxes by Judicial Rule: A Case for Reform,* 38 Ohio St. L.J. 539, 540 nn. 7-9 (1977).

5. Currently, four states — Alaska, Michigan, New Hampshire, and Wyoming — have adopted the 1958 version of the Uniform Estate Tax Apportionment Act while six — Hawaii, Maryland, North Dakota, Oregon, Rhode Island, and Vermont — adhere to the 1964 revision. 8 Uniform Laws Ann. *Uniform Estate Tax Apportionment Act* 63-64 (1978 Supp.).

6. Although the predecessor statute to section 11-109 of the Estates and Trusts Article, contained in Code (1957, 1969 Repl. Vol.), Art. 93, § 11-109, was in force at the time of Dr. Johnson's death, no substantial change was made in the 1974 recodification. Consequently, in this opinion we will only refer to the statute as it is presently codified.

unless prohibited by statute or public policy, the intent of the testator as ascertained from the four corners of the will controls the disposition of a decedent's estate. *E.g., Wesley Home v. Merc.-Safe Dep. & Tr.,* 265 Md. 185, 198, 289 A. 2d 337, 344 (1972); *Veditz v. Athey,* 239 Md. 435, 448, 212 A. 2d 115, 122 (1965); *Shellady, Inc. v. Herlihy, Ex'r,* 236 Md. 461, 471, 204 A. 2d 504, 509 (1964). Most, if not all courts, including the Court of Special Appeals in its opinion below, have recognized, however, that under tax apportionment statutes an intention not to apportion must be plainly stated in the will or other controlling instrument before the legislative scheme can be ignored. *See Hall v. Johnson,* 38 Md. App. 589, 596 & n. 7, 382 A. 2d 332, 336 & n. 7; Annot., 71 A.L.R.3d 247, 315 & n. 81 (1976) (citing cases). In examining a will for the purpose of fixing estate tax responsibility, the court should not try to discern what the testator meant to say, but what he meant by what he did say, for a few simple words, which need not be couched in terms of a negative direction against apportionment, will be sufficient if they demonstratively express the testator's intent. *Succession of Jones,* 172 So. 2d 312, 315 (La. App.), *cert. denied,* 247 La. 718, 174 So. 2d 131 (1965). Put another way, "[i]n a tax allocation problem the text of the will is to be scanned only to see if there is a clear direction *not* to apportion, and if such *explicit* direction is not found, *construction of text ceases because the statute states the rule." In re Mills Estate,* 189 Misc. 136, 64 N.Y.S.2d 105, 110 (1946) (emphasis in original), *aff'd,* 272 App. Div. 229, 70 N.Y.S.2d 746 (1947), *aff'd,* 297 N. Y. 1012, 80 N.E.2d 535 (1948), *quoted in Hall v. Johnson, supra,* 38 Md. App. at 596, 382 A. 2d at 336; *see* Annot., 71 A.L.R.3d 247, 317-19 (1976); *cf. Aged People's Home v. Hospital (Textor v. Textor),* 170 Md. 128, 131, 183 A. 247, 248 (1936) (in absence of explicit provisions in will allocating inheritance tax to residue, beneficiaries must bear tax burden).

In seeking to show that the contents of Dr. Johnson's will demonstrate a clear intent to avoid the rule of apportionment set out in section 11-109, respondents, who bear the burden of proof, *In re Pepper's Estate,* 307 N. Y. 242, 120 N.E.2d 807, 811 (1954); Mitnick, *State Legislative Apportionment of the*

*Federal Estate Tax,* 10 Md. L. Rev. 289, 310-11 (1949), have focused almost exclusively on the initial item of the will.

> FIRST: I direct that all lawful debts I owe at the time of my death, including funeral and administration expenses and the expense of my last illness (but not including debts secured by mortgages on real property, except matured obligations as they fall due), and *all estate and inheritance taxes, be paid as soon after my death as can lawfully and conveniently be done.* [(Emphasis supplied.)]

While we have no doubt that words similar to those used in this first clause are contained in many wills which have been probated in this State, including wills which have been before this Court on other occasions for other reasons, we have not been presented previously with the question of whether such language constitutes a direction that the residuary portion of the estate provide the funds to pay estate taxes. Faced as we are with scant precedent from our previous cases, we explore the decisions of our sister states to see whether they have confronted this same constructional problem. In doing so, we find numerous states have adopted statutes similar to ours and a number of their courts have been presented with the contention that language almost identical to that contained in the first clause of the Johnson will expresses an intent not to apportion. Of those, a vast majority have held that a direction against apportionment is signified by such language.

Typical of the analysis utilized primarily by these authorities is the opinion of the Supreme Court of Virginia in *Baylor v. National Bank of Commerce of Norfolk,* 194 Va. 1, 72 S.E.2d 282 (1952). There, when called upon to determine whether the testator had sufficiently communicated an intent to charge his general estate rather than each legatee with the expense of estate and inheritance taxes by directing "that all my just debts, funeral expenses and any inheritance, estate, and transfer taxes which may be assessed against my estate, or any beneficiary under this will ... be paid by my

Executors, hereinafter named, as soon as practicable after my death," the court opined:

> The testator made no distinction between debts, funeral expenses and State inheritance and Federal transfer taxes. It is clear from the language used that he intended all of the items to be treated alike and to be paid in the same manner and from the same fund [, the residue]. [72 S.E.2d at 284.]

Using this same analysis when dealing with similar testamentary provisions, a number of other courts have reached the same result as did the Supreme Court of Virginia. See *Starr v. Watrous,* 116 Conn. 448, 165 A. 459-60 (1933); *In re Bett's Estate,* 2 Ill. App. 2d 453, 119 N.E.2d 801, 803-04 (1954); *University of Louisville v. Liberty Nat. Bank & T. Co.,* 499 S.W.2d 288, 289 (Ky. 1973) (overruling *McKinney v. Mt. Sterling Nat. Bank,* 310 Ky. 186, 220 S.W.2d 379, 382-83 (1949)); *Succession of Jones,* 172 So. 2d 312, 315 (La. App. 1965); *Thomas v. Fox,* 348 Mass. 152, 202 N.E.2d 912, 913 (1964); *In re Hund's Will,* 266 App. Div. 379, 42 N.Y.S.2d 505, 506-07 (1943) (per curiam); *In re Moritz' Will,* 48 Misc. 2d 323, 264 N.Y.S.2d 734, 737 (Sur. Ct. 1965); *In re James' Estate,* 180 Misc. 441, 40 N.Y.S.2d 4, 6 (Sur. Ct.), *aff'd,* 267 App. Div. 761, 45 N.Y.S.2d 938 (1943); *Gaither v. United States Trust Company of New York,* 230 S. C. 568, 97 S.E.2d 24, 26-27 (1957); *In re Cudahy's Will,* 251 Wis. 116, 28 N.W.2d 340, 341 (1947); *In re Ogburn's Estate,* 406 P. 2d 655, 657 (Wyo. 1965); *see In re Bauer's Will,* 54 Misc. 2d 1060, 284 N.Y.S.2d 98, 104 (Sur. Ct. 1967); *In re Herz' Estate,* 203 Misc. 1077, 119 N.Y.S.2d 129, 132-33 (Sur. Ct. 1953); *In re Horn's Estate,* 351 Pa. 131, 40 A. 2d 471, 473 (1945).

Although we recognize that this very substantial authority merits our serious consideration before rejecting it, we nonetheless conclude that the decisions constituting the majority are not soundly reasoned and we decline to follow them; instead, we prefer to join the ranks of a small minority of courts which have reached the opposite but, in our view, the correct result. See *In re Estate of Cummings,* 263 Cal. App. 2d 661, 69 Cal. Rptr. 792, 797 (1968); *In re Keller's*

*Estate,* 134 Cal. App. 2d 232, 286 P. 2d 889, 892 (1955); *In re Grondin's Estate,* 98 N. H. 313, 100 A. 2d 160, 162-63 (1953); [7] *In re Robord's Estate,* 69 Misc. 2d 1026, 332 N.Y.S.2d 698, 701-02 (Sur. Ct. 1972); *In re Carrington's Estate,* 136 N.E.2d 182, 184-85 (Ohio P. Ct. 1956); *Skaggs v. Yunck,* 10 Or. App. 536, 500 P. 2d 1230, 1231 (1972). Accepting the premise, as all courts on both sides of this controversy do, that a statute directing apportionment will only be ignored if the testator clearly and unambiguously indicates that to be his intention,[8] we fail to see how the first clause, whether read in isolation or examined in the context of the entire will, in any way expresses Dr. Johnson's desire that all the beneficiaries should not share proportionately the bite of the federal estate tax.

Lending uncertainty to the result reached by those courts that have found clauses similar to the first in Dr. Johnson's will sufficient to show an intent to apportion is the fact that the logic of their analysis can also be used to sustain an argument that the language of the will, by grouping debts and expenses with taxes, expressed an intent to apportion debts and expenses among the beneficiaries. We say this because we see no reason why the rule that, absent a provision in the will to the contrary, debts and expenses are charged to the residue, *see England v. Prince George's Parish,* 53 Md. 466, 471 (1880), should override the presumption that, absent an expression of intent in the will to the contrary, inheritance and estate taxes are charged to the individuals receiving the gifts, *Bouse v. Hutzler,* 180 Md. 682, 685, 26 A. 2d 767, 769 (1942); Md. Code (1974), § 11-109 (b) of the Estates and Trusts Article. In actuality, without more, there is no basis for asserting other than that these legal presumptions continue independently with neither being affected by the fact that words which pertain to each happen to be in the same clause of the will; to draw any conclusion from the mere

---

7. A comparison of In re Grondin's Estate, 98 N. H. 313, 100 A. 2d 160 (1953) with In re Crozier's Estate, 105 N. H. 440, 201 A. 2d 895 (1964), indicates that the latter decision may have overruled the former sub silentio.

8. *Compare, e.g.,* Succession of Jones, 172 So. 2d 312, 314 (La. App. 1965) *and* In re Ogburn's Estate, 406 P. 2d 655, 657 (Wyo. 1965) *with* In re Carrington's Estate, 136 N.E.2d 182, 185 (Ohio P. Ct. 1956) *and* Skaggs v. Yunck, 10 Or. App. 536, 500 P.2d 1230, 1231 (1972).

grouping of debts, expenses, and taxes in a single clause is, in fact, tantamount to giving one legal presumption precedence over another without instruction from the testator or other justification.

In reaching this determination, we are not unaware that, in addition to associating ourselves with the result reached by the small minority of the courts which have considered this issue, we might appear to some to be ignoring the legislature's direction that we strive for conformity with our sister states when construing section 11-109. In subsection (i) the General Assembly directed:

> Such of the provisions of [section 11-109] as are uniform with statutes enacted in other states shall be so construed as to effectuate their purpose to make uniform the laws of those states which enact such provisions.

In rendering our decision in this case, however, we do not think we have violated the dictates of that subsection. Here, there is no dispute with reference to the meaning of the statute for, as we have already established, all agree that under subsection (k) of section 11-109, the statute's provisions apply unless the decedent in her will clearly and unambiguously indicates a contrary intent. The only real issue is in the construction of the will, a question which is to be answered under the well-established principles used in this State to discern any testator's intent with regard to the disposition of his property.[9]

---

9. In connection with our analysis of the scope of subsection (i) of section 11-109, we note that the Court of Special Appeals apparently acted under the impression that subsection (i)'s call for uniform construction limited it to the consideration of only opinions of courts in Uniform Estate Tax Apportionment Act jurisdictions. Hall v. Johnson, *supra,* 38 Md. App. at 594-95, 382 A. 2d at 335. If that is its view, we think it erroneous. We point out that the General Assembly declined to adopt the Uniform Act's provision on uniformity, which provides that "[t]his Act shall be construed to effectuate its general purpose to make uniform the law of those states which enact it," Uniform Estate Tax Apportionment Act § 9 (1964 rev.), *reprinted in* 8 Uniform Laws Ann. 166 (1972); instead, the legislature included subsection (i), quoted above, which does not make interpretations of the Uniform Act the only gauge for our constructional efforts but rather suggests we seek uniformity with all "other states" that have enacted apportionment statutes containing provisions similar to Maryland's. In

We recognize, of course, that our failure to give the language of the first clause the import respondents assert it deserves relegates it to little more than a restatement of the statutory duties of the executor. *See* Md. Code (1974), § 7-401 of the Estates and Trusts Article (personal representative pays expenses and debts); *id.* (1957, 1972 Repl. Vol., 1978 Cum. Supp.), Art. 62A, § 4 (executor shall pay inheritance taxes); *id.* (1957, 1975 Repl. Vol., 1978 Cum. Supp.), Art. 81, § 152 (executor shall pay state estate taxes); I.R.C. § 2002 (executor shall pay federal estate tax).[10] Yet, we do not think this interpretation in any way vitiates the rule of construction that "words in a will are never to be rejected as meaningless or repugnant if by any reasonable construction they may be given effect and made consistent and significant." *Cole v. Bailey,* 218 Md. 177, 181, 146 A. 2d 14, 16 (1958). Simply because the words of the will restate the law or add nothing of substance to what would have occurred without them does not deprive those words of their effect for they are indicative of the testator's intent and must be respected and carried out

---

reviewing the estate tax apportionment statutes of states that have adopted the Uniform Act, as well as those jurisdictions which have apportionment enactments other than the Uniform Act, we have found no substantial variation in their provisions dealing with the testamentary language necessary to show an intention that apportionment not take place. This suggests that the decisions of the courts in all states having apportionment statutes similar to Maryland's, whether it be the Uniform Act or otherwise, should be given consideration.

Even if we were to agree with the apparent view of the Court of Special Appeals that great weight should be given to the opinions of the courts of Uniform Act states, we still would have difficulty recognizing as controlling the two cited cases from those states. In each the court was called upon to interpret what, if any, intent was expressed by a clause very similar to the first item in Dr. Johnson's will and in each the court, while explicitly recognizing that the language was ambiguous, nonetheless went on to declare it a plain mandate from the decedent that there should be no estate tax apportionment. In re Crozier's Estate, 105 N. H. 440, 201 A. 2d 895, 896-97 (1964); In re Ogburn's Estate, 406 P. 2d 655, 660 (Wyo. 1965). In so concluding, it appears to us that both courts trampled the universal rule that the testator's intent not to apportion must be clearly and unambiguously expressed; each, while recognizing the uncertainty of the will's direction with regard to apportionment, nonetheless proceeded to squeeze and contort the language actually used by the testatrix to produce an expression of intent out of whole cloth. We decline to accept as persuasive authority cases which appear to change the judicial role from one of discerning intent to one of creating it on the basis of vague implications and innuendos.

10. We refer to the present codifications of these laws, there being no substantial change in the statutes as they existed and were codified at the time of Dr. Johnson's death.

independently of any parallel, consistent provisions of the law. *See In re Estate of Pfaff,* 41 Wis. 159, 163 N.W.2d 140, 141 (1968). Further, the logic of respondent's argument — that by mentioning taxes the testatrix must have intended something other than what the law provides — requires that they likewise be able to assign some special role, other than one parroting the law, to the remainder of the words of the first clause directing payment of expenses and debts. This they make no effort to do.

No magic or mystical word or phrase is required to shift the burden of estate taxes from the legatees and devisees to the residue; however, for us to recognize that the testatrix's ritualistic, "boiler plate" reference to the payment of debts, expenses, and taxes in the first clause of her will states an intent not to apportion would require that we be clairvoyant. In short, we detect no direction by the decedent in the first paragraph of her will not to apportion taxes as section 11-109 provides.

The two doctor-legatees also suggest several other arguments relating to the wording of the will which they contend further justify the conclusion that the testatrix intended no apportionment. Again referring to the language of the first clause of Dr. Johnson's will, the respondents assert that, when considered in conjunction with part (B) of clause ten giving the testatrix's personal representative the discretionary power to "pay all expenses enumerated in Article FIRST hereof, either from the real or personal property of my estate," the decedent's intent to apportion is clear because the residuary is the only portion of the estate which included real property and thus is the only source from which expenses and taxes could be satisfied. As we read this clause, however, it appears obvious to us that the testatrix was merely taking the precautionary measure of enabling her personal representative to contravene the common law rule — that, absent a contrary expression of intent in the will, personalty in the residue is utilized to discharge debts, expenses, and taxes prior to the use of realty, *see* Reno, *The Maryland Order of Abatement of Legacies and Devises,* 17 Md. L. Rev. 285, 287, 291 (1957) — and sell either real or

personal property so as to comply with his legal duty to pay the taxes and other expenses of the estate. In fact, this is simply another example of the testatrix repeating what is already provided for by statute. *See* Md. Code (1974), § 9-103 (b) of the Estates and Trusts Article (formerly Code (1957, 1969 Repl. Vol.), Art. 93, § 9-103 (a)).

Finally, respondents ask us to consider the arrangement of the clauses within the will, which by its first directs the payment of taxes and expenses, then establishes the specific bequests and the trust for the widower, and lastly creates the residuary trust for the son, as indicating testatrix's intent that the residue should only consist of what remained after the payment of all expenses, debts, taxes, and the specific bequests. We conclude, however, that this order of expression standing alone, indicates no more than that the will was artfully and logically drawn. If anything, our view that this instrument does not contain a directive against apportionment is bolstered by considering the overall testamentary plan. Our reading shows Dr. Johnson, under the guidance of her attorney, was extremely careful and precise in planning the disposition of her property. Evidence of this may be gleaned from her use of a fractional share formula marital deduction clause to establish the trust for her aged husband as well as her foresight in including a perpetuities savings clause, a common disaster clause, definitions to make clear her intention when she used such terms as "child" and "per stirpes," and a detailed procedure for the distribution of her personal property among her children should dispute about that property arise. Further, as is evident from the second item of the will, when Dr. Johnson desired to free a specific bequest from an encumbrance, she was fully aware of a clear method of accomplishing that result: "I direct that any indebtedness which is secured by our residence ... together with any interest thereon which may be due and owing, be fully paid out of my estate, my intention and desire being that my said husband hold such property free and clear of any mortgages or similar encumbrances existing at the time of my death . . . ." Likewise, if she wished to free the beneficiaries of their estate tax responsibilities, a few simple words could have been employed to assure that result.

Convinced as we are, after examining the language and provisions of Dr. Johnson's will, that the testatrix did not clearly and unambiguously state her intention to use a method of tax allocation other than that provided by the General Assembly, the federal estate tax on the estate of Dr. Catherine W. Johnson must be apportioned among the beneficiaries according to the dictates of section 11-109.

> *Judgment of the Court of Special Appeals reversed and case remanded to that court with instructions to reinstate the order of the Orphans' Court of Prince George's County apportioning taxes.*
> *Costs to be paid by respondents.*

*Murphy, C. J., dissenting:*

The majority today holds that Dr. Johnson's will does not explicitly direct the payment of all estate and inheritance taxes out of the residuary estate, and as a consequence the federal estate tax must be apportioned among all the legatees. Because I think that Articles FIRST and TENTH, when read together, sufficiently express Dr. Johnson's intention to direct against apportionment under Maryland Code (1974), § 11-109 (k) of the Estates and Trusts Article, I respectfully dissent.

To determine the effect of a tax clause in a will, the Court must first ascertain the testatrix's intent. As Chief Judge Gilbert said in his opinion for the Court of Special Appeals, "We look to the four corners of the will to ascertain that intent. Once we have determined that intention, it prevails." *Hall v. Johnson,* 38 Md. App. 589, 595, 382 A. 2d 332, 335 (1978). Each paragraph of the will must be read in light of the other paragraphs, and in light of the general testamentary plan of the whole will. *In re Armstrong's Estate,* 56 Cal. 2d 796, 17 Cal. Rptr. 138, 366 P. 2d 490 (1961); *McLaughlin v. Green,* 136 Conn. 138, 69 A. 2d 289 (1949); *In re Artz' Estate,*

254 Iowa 1064, 120 N.W.2d 418 (1963); *In re Ogburn's Estate,* 406 P. 2d 655 (Wyo. 1965).

Dr. Johnson left a taxable estate in excess of $299,000, of which more than $246,000 was placed in the residuary trust for her son. Under the majority's decision, each of the thirteen specific legatees, seven of whom receive $500 or less, will have to contribute 20 percent of the value of the legacy to pay the federal estate tax. After considering the will as an entirety, the size of the gross estate (over a half million dollars), and the amounts of the several legacies, the Court of Special Appeals properly concluded that the testatrix intended that the federal estate taxes were to be deducted from the residuary estate, and that all other testamentary gifts were to pass free of the tax. 38 Md. App. at 597, 382 A. 2d at 337. *See also In re Estate of Tedford,* 258 Iowa 890, 140 N.W.2d 908 (1966); *Old National Bank of Washington v. Damon,* 3 Wash. App. 721, 477 P. 2d 29 (1970) (testator's intention as to distribution of death tax burden is determined from tax clause in connection with every other paragraph of the will).

In analyzing the will to determine the testatrix's intent, the Court should, if at all possible, avoid any construction which would render the tax exoneration clause meaningless. *National State Bank of Newark v. Nadeau,* 57 N.J. Super. 53, 153 A. 2d 854 (1959); *Oviatt v. Oviatt,* 24 Ohio Misc. 98, 52 Ohio Op. 2d 235, 260 N.E.2d 136 (1970). There is a presumption that the testatrix did not use superfluous language in the will, and that she intended each part of the will to have some effect. *Beals v. Magenis,* 307 Mass. 547, 31 N.E.2d 20 (1941); *Nadeau, id.* These fundamental principles, which were properly applied by the Court of Special Appeals, have been overlooked by the majority of this Court.

When Dr. Johnson directed her executor to pay "all estate and inheritance taxes," along with debts, funeral and administration expenses, and authorized payment of those expenses "either from the real or personal property of my estate," she was not merely reiterating a series of preexisting legal obligations. Although the executor has a duty to pay lawful debts, administration expenses, all estate taxes, and

inheritance taxes on probate assets, Code (1975), § 152 of Art. 81, he need not pay these expenses "as soon after [testatrix's] death as can lawfully and conveniently be done." Code (1974), §§ 7-305, 7-307 of the Estates and Trusts Article. The inheritance tax owed on the appellees' legacies is payable out of each beneficiary's individual legacy, unless the testatrix directs payment out of the residuary estate. *Bouse v. Hutzler,* 180 Md. 682, 26 A. 2d 767 (1942). Likewise, the federal estate tax must be apportioned among all persons interested in the estate, except as otherwise provided in the will. Code (1974), § 11-109 (b), (k) of the Estates and Trusts Article. Under Dr. Johnson's will, only the residuary estate receives any real property, and, according to Article TENTH, this real property can be the source of funds for payment of the inheritance and estate taxes.

If Articles FIRST and TENTH are read together, and if Article FIRST is not dismissed as meaningless "boiler plate," the conclusion reached by the Court of Special Appeals is inescapable. As Chief Judge Gilbert observed for that court: "Dr. Johnson possessed a reasonable command of the English language and knew what she had written in 'Article FIRST' of her will." 38 Md. App. at 597, 382 A. 2d at 337. It is unlikely that she was "uttering mere platitudes" about the payment of her taxes, since she is presumed to have known what the law would require in the absence of any contrary direction in her will.

Those courts which have considered whether words similar to those used by Dr. Johnson are sufficient to show the testatrix's intention to render a tax apportionment statute inapplicable agree that the expression of intent must be "clear and unambiguous." *See* 38 Md. App. at 597 & n. 7, 382 A. 2d at 336 & n. 7. The Court of Special Appeals, adopting this standard, considered the cases from other Uniform Act states as more pertinent than opinions from the courts of states which have not adopted the Act. *See* § 11-109 (i) of the Estates and Trusts Article. The majority pays lip service to the legislature's expressed direction for uniformity of construction in states adopting provisions of § 11-109, and then rejects the only two decisions from Uniform Act

jurisdictions which address the issue before the Court. Both *In re Ogburn's Estate,* 406 P. 2d 655 (Wyo. 1965) and *In re Crozier's Estate,* 105 N. H. 440, 201 A. 2d 895 (1964), analyzed will clauses similar to Article FIRST of Dr. Johnson's will. The Supreme Court of Wyoming, while noting that a direction to pay "all my just debts, taxes, funeral expenses . . . of my estate" was not a "model directive against apportionment," 406 P. 2d at 658, nevertheless concluded that

> "by inclusion of the tax clause in the usual ritualistic and introductory portion of the will directing payment of debts, expenses, et cetera, which when possible are ordinarily satisfied from the residuary estate, it seems clear that testatrix also intended that the death taxes embraced within the language were to be paid from the same source." 406 P. 2d at 659.

Similarly, the New Hampshire Supreme Court interpreted a clause directing "payment of all my just debts, . . . and inheritance taxes out of my estate," and decided that it was "an artless and ambiguous but in the last analysis an effective provision against apportionment of death taxes." 105 N. H. at 442, 201 A. 2d at 897.

In other states which have not adopted the Uniform Act, but which allow a testatrix to shift the death tax burden by so providing in her will, courts have construed clauses like Article FIRST of Dr. Johnson's will as effective to vary the otherwise applicable statute. *See, e.g., In re Estate of Tedford,* 258 Iowa 890, 140 N.W.2d 908 (1966) ("pay all death and inheritance taxes"); *University of Louisville v. Liberty Nat. Bank & T. Co.,* 499 S.W.2d 288 (Ky. 1973) (pay all "taxes assessed against my estate and all beneficiaries therein named"); *Thomas v. Fox,* 348 Mass. 152, 202 N.E.2d 912 (1964) ("all my debts, . . . and all inheritance taxes be paid"); *In re Bauer's Will,* 54 Misc. 2d 1060, 284 N.Y.S.2d 98 (Sur. Ct. 1967), *adhered to,* 55 Misc. 2d 808, 286 N.Y.S.2d 323 (1968) ("administration expenses and any estate taxes be paid"); *In re Lander's Estate,* 416 Pa. 605, 207 A. 2d 753 (1965) ("my just debts, . . . Estate taxes and Pennsylvania Inheritance taxes

be fully paid"). While recognizing that today's decision is against the great weight of authority, the majority nevertheless aligns itself with those few courts which hold that language similar to that in Dr. Johnson's will does not direct against apportionment. I cannot accept the majority's conclusion that "this very substantial authority" consists of decisions which are "*not soundly reasoned*" and which should not be followed.

The fact that inheritance and estate taxes are grouped in Article FIRST with the other expenses usually paid out of the residuary estate further buttresses the holding of the Court of Special Appeals. *See Starr v. Watrous,* 116 Conn. 448, 165 A. 459 (1933), where the first clause of the will directed the executors to pay all "just debts, funeral expenses, succession and other taxes." A statute required the payment of succession taxes from each legacy, unless otherwise provided by the will. In holding that the succession tax burden was effectively shifted from the specific legatees to the residuary estate the court stated,

> "in general, all that is required is that the will sufficiently express an intent that the tax shall be paid out of the estate of the testator other than the property passing to the recipient as donee, beneficiary, or distributee. A natural and appropriate method of accomplishing this purpose is to provide for payment of the tax in like manner as debts of the estate and funeral expenses, the result of this course being that the tax ultimately comes out of the residuary estate."

> \* \* \*

> "... The testatrix must be presumed to have known that, unless she directed otherwise, the succession taxes paid would be deducted from the several legacies. The presence of the provision for them in the will evinces a desire and intention that they should be satisfied in some other way, and inclusion of them in the same classification as debts, funeral expenses, and ordinary taxes can hardly be

regarded otherwise than as expressing an intention that they should be paid out of the estate in the same way and from the same funds as these other charges." 116 Conn. at 451-53, 165 A. at 460.

See also In re Cudahy's Will, 251 Wis. 116, 28 N.W.2d 340 (1947), which held that the testator's inclusion of taxes with debts and funeral expenses in Article First of the will was sufficient indication of an intention to require payment of inheritance taxes, ordinarily paid by specific legatees, out of the residuary estate.

Finally, it must be noted that § 11-109 (k) of the Estates and Trusts Article, which allows a testatrix to avoid apportionment, does not mandate the use of any particular word or form of words. Under the statute, apportionment is the rule "[e]xcept as otherwise provided in the will, or other controlling instrument." I might agree with the majority's analysis if § 11-109 (k) required the testatrix's intention to be "expressly indicated" or "specifically provided" in the will (see §§ 3-208 (b), 4-405, 4-406 of the Estates and Trusts Article), but I am unwilling to engraft these additional words onto § 11-109 (k). Cf. Caruthers v. Buscher, 38 Md. App. 661, 382 A. 2d 608 (1978) (clause does not expressly indicate testator's intent to exonerate realty, as required by § 4-406, Estates and Trusts Article).

I would affirm the judgment of the Court of Special Appeals.