(Nos. 14215, 14216.—Reversed and remanded.)

JAMES W. WATTS, Exr. Appellee, *vs.* NETTIE M. KILLIAN, Appellant.—JAMES W. WATTS, Exr. Appellant, *vs.* NETTIE M. KILLIAN *et al.* Appellees.

*Opinion filed December 22, 1921.*

1. MORTGAGES—*when mortgaged property is primary fund for payment of mortgage debt.* Where a grantee of mortgaged property assumes and agrees to pay the mortgage debt he becomes the principal debtor and the grantor the surety for the payment of the debt, and as between them the mortgaged property becomes the primary fund for the payment of the debt; but this is true only between the parties to the conveyance, as the rule rests upon the relation of principal and surety and the right of the surety to the benefit of the collateral.

2. WILLS—*when testator's mortgaged property is not primary fund for mortgage debt.* One who purchases mortgaged property and agrees to pay the mortgage becomes personally liable for the mortgage debt, and where he dies testate before the maturity of the debt the mortgaged property is not the primary fund for the debt as between the widow, who renounced the will, and the claimants of the fee, but the personal estate will be liable although the mortgagee has filed no claim against the personal estate. (*Sutherland* v. *Harrison,* 86 Ill. 363, followed.)

3. SAME—*widow who renounces will is entitled to one-third of personalty only after payment of debts.* The right of a widow, upon renouncing the will, to take one-third of the personal estate is not a right to one-third of the whole personal estate at the time of the testator's death but only to one-third after the payment of all debts.

4. SAME—*court will so construe will as to dispose of all testator's property, if possible.* Where a person dies testate it is presumed he intended to dispose of all his property and leave no part of it as intestate estate, and this presumption is so strong that the court will adopt any reasonable construction of the will rather than hold that the testator intended to die intestate as to any of his property.

5. SAME—*when executor may sell undivided interest not disposed of in the will.* A residuary clause in a will directing the executor to sell all the rest of the testator's real and personal property, wherever situated, "except any farm property in Lee county," does not preclude the executor from selling an undivided one-sixth interest which the testator owned in a tract of land in said county

and which he failed to dispose of by the will, where the will declares an express intention of the testator not to die intestate and such sale is necessary to carry out the manifest intention of the testator shown in other provisions of the will.

6. SAME—*when provision in will to prevent lapse does not dispose of after-acquired property.* A clause in a will declaring the intention of the testator that the provisions of his will shall dispose of all his property of every kind and character, and that if any provision should fail such property shall be given to his grandchildren, cannot be construed as disposing of a farm which the testator acquired after the will was made, where the will makes no reference to after-acquired property.

7. SAME—*real property acquired after making of will does not pass unless an intention affirmatively appears.* Real estate acquired after the execution of a will will not pass by virtue of the will unless an intention to dispose of the same affirmatively appears from the will.

APPEAL from the Circuit Court of Lee county; the Hon. OSCAR E. HEARD, Judge, presiding.

MARK C. KELLER, for Nettie M. Killian, appellant and appellee.

JOHN P. DEVINE, for James W. Watts, Exr. appellee and appellant.

HENRY C. WARNER, and ROBERT L. WARNER, for appellee Jessie S. Johnson.

SHERWOOD DIXON, for infant appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Squire E. Johnson, of Dixon, in Lee county, executed his last will and testament on November 21, 1914, and died on April 11, 1920, leaving Jessie Johnson, his widow, and Nettie M. Killian, his daughter and only heir-at-law. The will was admitted to probate, and the widow renounced her rights under the will and elected to take under the law. The executor, James W. Watts, filed his bill in the circuit

court of Lee county making the widow, Jessie Johnson, the daughter, Nettie M. Killian, and the infant children of Nettie M. Killian, defendants, and praying for a construction of the will. The court appointed Sherwood Dixon guardian *ad litem* for the infant defendants, and answers were filed setting up the claims of the defendants, respectively, under the will. A decree was entered construing the will; from which the executor and Nettie M. Killian prosecuted appeals, and the appeals were consolidated in this court. ·

By the first clause of his will Squire E. Johnson directed the payment of his debts. By the second he gave to his wife his household and kitchen furniture. By the third he gave to his daughter, then Nettie M. Place but since married to Oliver L. Killian, a piano. By the fourth clause he devised to his wife his homestead for life with remainder to his daughter, provided the daughter should occupy the same as a home, and if she failed to occupy the premises they were to be sold by the executor and the proceeds invested in farm property in Lee county, as thereinafter provided. By the fifth clause he devised to his wife a farm of about 340 acres for life with remainder to his daughter for life and remainder after her death to her children in fee simple. By the sixth clause he devised to his daughter 166 acres of land in Lee county for life with remainder to her children in fee. By the seventh clause he directed his executor, as trustee, to sell and convey at private sale all the rest, residue and remainder of his estate, both real and personal, wherever situated, except any farm property in Lee county owned by him at the time of his death, and to collect all credits, moneys, notes, bonds, mortgages and other securities, and after paying all his debts to invest the same in farm lands in Lee county and cause the title to the real estate so purchased to be invested in his daughter for life with remainder to her children in fee, and if the daughter should not be living at the time of the purchase, the title was to be vested in her children as tenants in common,

in fee simple. By the eighth clause he declared his inten-
tion that the foregoing should operate to dispose of his
property of every kind and character, but if any provision
should fail, he gave, devised and bequeathed the same to
the children of his daughter.

The will specifically devised all the property of the tes-
tator which he owned when the will was made, in 1914, ex-
cept an undivided one-sixth interest in a farm of 255 acres
in Lee county, which either passed by the eighth clause or
was included in the devise to the trustee to sell and convey
the same under the seventh clause. The testator afterward
acquired other lands and real estate in Lee county and in
South Dakota and owned the same at the time of his death,
in 1920. Among the lands purchased by the testator after
the will was made was a farm of 440 acres in Lee county,
conveyed to him on October 27, 1919, by Robert L. Wat-
son and wife. That farm was subject to a mortgage for
$24,000, due March 1, 1923, with interest payable annually
at five and one-half per cent, executed by Norman G. Reit-
zel and wife. Reitzel and wife had conveyed the farm to
Watson, who assumed and agreed to pay the mortgage in-
debtedness as part of the purchase price, and on the con-
veyance to the testator he assumed and agreed to pay the
mortgage indebtedness when due, with the interest, after
March 1, 1920. The court decreed that the personal prop-
erty should not be used for the payment of the mortgage
indebtedness or the interest thereon but the land was the
primary fund for the payment of the same; that it was
the intention of the testator to devise all his real property
not otherwise specifically devised, to the children of his
daughter, and that, subject to her dower, the title to the
undivided one-sixth interest in the farm land above men-
tioned was vested in said children.

The positions of the several parties as to the construc-
tion of the will are as follows: James W. Watts, the ex-
ecutor, Nettie M. Killian and the guardian *ad litem* con-

tend that the personal property is the fund out of which the mortgage indebtedness on the 440 acres should be paid. Jessie Johnson, the widow, insists that the mortgaged land is the primary fund out of which the mortgage indebtedness is to be paid, as directed by the decree. The executor claims that he is authorized to sell the undivided one-sixth interest in the 255 acres and invest the proceeds, with other funds, in farm land in Lee county. Nettie M. Killian contends that the one-sixth interest and the farm purchased from Watson are intestate property and descended to her as heir-at-law, subject to the dower of the widow, and that the executor cannot sell the one-sixth interest. The guardian *ad litem* claims that the farm incumbered by the mortgage, and the undivided one-sixth interest, were devised by the eighth clause of the will to the infant children of Nettie M. Killian, whom he represents.

The most important question is whether the personal estate or the land is the primary fund for the payment of the mortgage indebtedness. The mortgagee did not file any claim against the estate on account of the mortgage debt within the time limited by law, so that he has no claim against the personal estate, and the question is to be determined between the widow and the other claimants of the fee.

There have been some decisions in cases arising between persons liable for mortgage debts where it has been said that land purchased by the holder of a mortgage was in his hands the primary fund for the payment of the mortgage. In *Lilly* v. *Palmer,* 51 Ill. 331, a mortgagor sold the mortgaged premises subject to the mortgage, and a third party who purchased the mortgage afterward obtained the title to the land, so that he became vested with the estates of both mortgagor and mortgagee. It was held that the mortgage was thereby paid and discharged and the purchaser stood in the position of one who had effected a strict foreclosure. The doctrine of merger of the estates was applied. The same doctrine was held in *Drury* v. *Hol-*

*den*, 121 Ill. 130. Again, in *Fish* v. *Glover*, 154 Ill. 86, it was said that as between the mortgagor and the grantee of mortgaged property who assumes the mortgage debt, the latter becomes the principal debtor and the former surety for the payment of the debt, and that as between them the mortgaged property becomes the primary fund. But this is only true as between the grantee of the mortgagor assuming the mortgage debt and the mortgagor himself. That rule rests upon the relation of principal and surety and the rights of a surety to the benefit of collateral.

The law applicable where the question arises between a widow and heirs or devisees was determined in *Sutherland* v. *Harrison*, 86 Ill. 363. In that case there were no children and the widow received all the personal property. A bill being filed to enforce a vendor's lien upon the real estate against the heirs of the purchaser, the heirs filed a cross-bill praying that the widow be required to satisfy the lien from the personal estate. It was contended by the widow that the land was the primary fund to be first applied in payment, and the court said that as supporting that position a class of cases was cited where one purchases an estate subject to a charge made by the previous owner, and it was held that the estate charged was the primary fund, but there was no such principle of general application. The court said it was well settled that the personal estate is the natural and primary fund for the payment of debts and legacies, and that there was no distinction between the case where there is a mortgage on land and that of a debt for unpaid purchase money for land where there is a vendor's lien therefor. There was a very full review of the authorities, and it was held that while the law gave to the widow the personal property, that did not mean all the personal property which the decedent died possessed of, but the residue of the personal estate after the payment of all debts. A decree requiring the widow to pay out of her own money, without contribution from the heirs, the amount

of the vendor's lien was affirmed. There is no distinction, in principle, between that case and this. The testator became personally liable to pay the mortgage indebtedness, and when due an action at law could have been maintained against him if living. As he died before the maturity of the debt the mortgagee could have filed his claim against the estate and had it allowed as a debt payable as any other debt. When the debt became due the testator would have paid it and have depleted his personal estate to that extent, or if there was a judgment against him his general property would have been subjected to payment.

*Dean* v. *Walker*, 107 Ill. 540, was an action of assumpsit against a grantee who had assumed and agreed to pay as a part of the consideration a mortgage indebtedness. The court commented on the doctrine maintained by some courts that the right of the mortgagee rests upon equitable subrogation but did not follow that doctrine, and placed the liability of the mortgagee on what was said to be the great and well settled principle that where one person makes a promise to another based upon a valid consideration for the benefit of a third person, such third person may maintain an action upon it. In *Webster* v. *Fleming*, 178 Ill. 140, the doctrine of *Dean* v. *Walker* was indorsed, and it was held that the purchaser of incumbered property who assumes and agrees to pay the incumbrance is personally liable to the holder of the incumbrance.

The substance and effect of the purchase by the testator was that the incumbrance was a part of the consideration left in his hands and which he was bound to pay. There was no dower as against the mortgage, and the right of the widow, upon renouncing the will, to take one-third of the personal estate was not a right to take the whole personal estate at the time of the death of the testator, but only one-third after the payment of all debts and obligations. She obtains her full statutory right by receiving one-third after payment of the mortgage indebtedness. It is

not to be understood that a condition may not arise involving the payment of a mortgage debt where a widow should only be required to contribute to the payment in proportion to the value of her dower interest, but no such case is presented here. The decree should have required payment of the mortgage indebtedness from the personal estate.

By the seventh clause of the will the testator directed his executor, as trustee, to sell and convey all the rest, residue and remainder of his property, real and personal, wherever situated, owned by him at his death, except any farm property in Lee county owned by him at the time of his death, and invest the proceeds in farm lands in Lee county. He had not specifically devised the one-sixth interest owned by him in the land above mentioned and it fell into the residue of the estate to be sold by the trustee unless it was excepted as the testator's farm property. Taking the fact that the one-sixth interest was not mentioned and that it was a small undivided interest, the natural conclusion is that he intended to except farms which he owned where there would be no reason for selling a farm and reinvesting the money in another farm. Any other tenant in common could maintain partition, which would probably result in a sale of the interest of the testator, and if it was not devised to the trustee the proceeds would go by descent, thereby defeating his intention that his daughter should have a life estate in his real estate with remainder to her children. The rule of law is, that when a person dies testate it will be presumed that he intended to dispose of all his property and leave no part of it as intestate estate, and that presumption is so strong that the court will adopt any reasonable construction of the will rather than hold that the testator intended to die intestate as to any of his property; (*Eyer* v. *Williamson*, 256 Ill. 540; *Wiltfang* v. *Dirksen*, 295 id. 362;) and in this will the testator expressly stated such intention. Considering that the testator had only a minor undivided interest, together with

his intention manifested by the will and his declared intention to dispose of his entire estate, we conclude that the undivided interest does not come within the description of his farm property, and the trustee is required to sell and convey it. As the trustee is required to sell and convey land he is invested by the will with the title. *Gardner* v. *Baxter,* 293 Ill. 547.

The question of the proper construction of the will as to the undivided one-sixth interest also arises under the claim of the guardian *ad litem* that it, together with the farm of 440 acres, was devised to the children of the daughter by the eighth clause. The testator declared in the eighth clause his intention that the will should operate to dispose of all his property, of every kind and character, but if for any reason any provision should fail, then in that event he gave, devised and bequeathed the property as to which there was such failure to the children of his daughter. The intention so expressed was, that if any of the specific bequests and devises set forth in the will should fail, then the property so specifically devised or bequeathed should pass to the children. The devise of the one-sixth interest was among the "foregoing provisions," and it did not fail or prove ineffective for any reason, and what has already been said respecting that interest disposes of the claim of the guardian *ad litem.* His further claim that the farm of 440 acres was devised to the children by the eighth clause cannot be sustained for the reason that it was not within any of the provisions of the will. There is no language in the will which refers to after-acquired property except the prohibition against the sale of farm property which the testator might own at the time of his death. The eighth clause, relating to a failure of provisions of the will, cannot be construed to include the after-acquired farm.

The construction of the will as to the farm of 440 acres insisted upon by Nettie M. Killian is, that it descended as intestate estate to her, subject to the dower of the widow,

under the rule that real estate acquired after the execution of a will will not pass by virtue of the will unless an intention to dispose of the same affirmatively appears from the will. (*Woman's Union Missionary Society* v. *Mead,* 131 Ill. 338; *Cummings* v. *Lohr,* 246 id. 577.) Her position in that respect is not controverted by any other party, and the question will not require further consideration.

The decree is reversed and the cause remanded, with directions to enter a decree in accordance with this opinion.

*Reversed and remanded, with directions.*