Reese S. Martin, Individually, and Reese S. Martin, Executor of Last Will and Testament of Henry M. Martin, Deceased, Appellees, v. William R. Martin et al., Defendants. Lutie Ramp and Lois McCormick, Appellants.

Gen. No. 9,281.

Opinion filed June 23, 1941.

GREEN & PALMER, of Urbana, for certain appellants.

CARL I. GLASGOW, of Monticello, for certain other appellants; HENRY I. GREEN, HOMER SHEPHERD and ORIS BARTH, all of Urbana, and ASA S. CHAPMAN, of Champaign, of counsel.

T. E. LYONS and DOBBINS, DOBBINS & THOMAS, both of Champaign, for appellees.

MR. JUSTICE HAYES delivered the opinion of the court.

This is an appeal by the defendants, Lutie Ramp and Lois McCormick, from a decree granting partition of two hundred acres of land owned by Henry M. Martin at the time of his death,—to which he died intestate,—also construing his last will and testament which disposed of nine hundred and seventy-two (972) acres of land which was not partitioned. Partition was prayed by the original complaint and a construction of the will was prayed for in the counterclaim which was a part of the answer of Lutie Ramp and Lois McCormick.

Henry M. Martin died February 28, 1939 at the age of seventy-seven years. His will which was executed March 27, 1925, contained no residuary clause. Henry M. Martin left no widow and no lineal descendants. He was survived by one brother, William R. Martin and by nephews and nieces of a predeceased brother and sister.

The partition involved a farm containing 160 acres acquired by the testator, after the execution of the will, and forty acres which was a devise to Alvina Cox,

who died before the testator. There being no residuary clause in the will, said devise lapsed.

The principal question involved in this appeal is the eighteenth clause of the will of Henry M. Martin which reads as follows: "It is my will and desire that all of the devises to the Real Estate heretofore devised in this my last will and testament be taken and descend to the particular legatee or devisee named in reference thereto, subject to any and all mortgage indebtedness of any kind or description which may be standing against any of my aforesaid described Real Estate at the time of my death."

The will, after directing the payment of all his debts, bequeathed some household goods and heirlooms to some of the nephews and nieces, and then directed the sale of all of the remaining personal property,—except the bank stock—which he gave to his nephew, Reese S. Martin, his nieces, Leo White, Lutie Ramp and Lois McCormick, and his brother William R. Martin, to be divided equally between them. He then bequeathed certain legacies to churches and a cemetery, and made specific devises to his nephews, nieces, and his brother. The first bequest was to his nephew Reese S. Martin of three hundred and twenty (320) acres of farm land, then a particular devise of farm land to each of the remaining nephews, nieces and brother which included all the natural objects of his bounty. He made Reese S. Martin executor of his will. Reese S. Martin is a brother of appellants herein, Lois McCormick and Lutie Ramp.

All of the land specifically devised under the will was heavily incumbered, except that devised to Reese S. Martin. Two hundred and forty acres of this land had no incumbrance. The remaining eighty acres had only four thousand dollars on it at the time the will was executed, and thirty-four hundred dollars at the time of the death of the testator. His aggregate mortgage indebtedness, at the time the will was executed,

was $86,600, and at the time of his death it was $81,883.93. At the time of his death, he owned eleven hundred and seventy-two acres of land.

Appellants point out, with great emphasis, that Reese S. Martin received eight times as many acres as some of the other nephews and nieces, and that his land was only incumbered on an average of $10.82½ per acre, while some of the others were incumbered up to ninty dollars per acre.

Appellants contend that the total mortgage indebtedness should be prorated and equalized on an acreage basis among the persons taking title under the will.

The proofs were heard before the master, and he refused to hold with appellant's contention. The trial court sustained the master and construed clause eighteen of the will to mean that, "it was the testator's intention that each devisee pay the mortgage indebtedness which at the time of testator's death was a lien upon the specific tract of land devised to such devisee," and decreed, "that the burden of paying the mortgage indebtedness upon the respective tracts of land devised by said will devolved upon the respective devisees for whatever mortgage indebtedness there was against the particular tract of land devised to him or her at the time of the death of said testator, and that the respective tracts of land devised are liable for the amount of the mortgage incumbrance against each at the testator's death, and that no devisee may require the devisees of other lands to contribute so that the mortgage indebtedness on all of the devised lands will be equalized."

To adopt the construction contended by appellants, it would be necessary to treat the word "any" used as follows: "which may be standing against *any* of my aforesaid described real estate at the time of my death," as equivalent to the word "all." This is not in keeping with the general use of the word, nor is it warranted by the definition given by Webster where it

is defined as "one, indefinitely; one of three or more (which one not specified)." Applying Webster's meaning to the word "any" as used by the testator, we find his intention can best be determined by the following language, "Subject to any and all mortgage indebtedness of any kind or description which may be standing against any (one) of my aforesaid described (tracts of) real estate at the time of my death." This interpretation of the clause in question, seems to us to be the proper and logical one, as well as the one adopted by the circuit court which conforms to that which is ordinary and usual in every-day affairs of life. The usual thing for testators to do in disposing of their property is to provide for the mortgage indebtedness on land to be paid by the one who receives the land. Courts will always, if possible, so construe wills as to give effect to each and every part of the same. That can be accomplished in this case by simply giving to the eighteenth clause the ordinarily and generally accepted meaning. Appellants contend that the aggregate indebtedness, covered in all the mortgages, should be spread over all the land and each devisee pay into a common fund in proportion to the number of acres he received, for the purpose of clearing all the indebtedness. Anyone familiar with Illinois farm lands know there is a vast difference in value of lands on account of the fertility, quality of the land, location, buildings, improvements and drainage.

An examination of the will, in its entirety, discloses that it was carefully drawn and that the testator attentively figured out the descriptions and the division of acreage for his beneficiaries. It would take a very strained and far-fetched construction to hold that it was the intention of the testator to provide for any jack pot to pay all the mortgage indebtedness, for it appears from the record, that he was a man of many years' experience in farming and handling of farm lands; that his place known as the "Home Farm" had

two hundred and forty acres of unincumbered land, and eighty acres which had a small mortgage thereon. It is very clear from the will, that testator wanted this farm to go to Reese S. Martin. We are not concerned as to whether the will made an equal or fair distribution among the heirs. The property belonged to the testator. He had a right to dispose of it as he saw fit. The law cannot make a new will for him. For some reason, best known to himself, he picked Reese S. Martin to have the "Home Farm." He also made him executor of his will.

Appellants point out that unless their construction is adopted, that clause eighteen is fruitless and meaningless for they state that the law burdens each particular tract with the mortgage indebtedness thereon. They further state that if clause eighteen was omitted each devisee would have to pay the mortgage on his land. This is not true, for without clause eighteen the personal estate would be primarily liable for the payment of the mortgage indebtedness. *Sutherland v. Harrison,* 86 Ill. 363; *Watts v. Killian,* 300 Ill. 242.

The testator did not put a residuary clause in his will. At the time he made his will, and at the time of his death, he had considerable personal property which he saw fit to pass under the statute of descent of the State of Illinois. If he had not put clause eighteen in his will, his personal estate, not specifically bequeathed, would have gone to the payment of the mortgage indebtedness. The application of this to the mortgages would have been a very involved task. With his experience in farm lands and in handling mortgage indebtedness, it is reasonable to presume that he wanted to avoid this difficult situation by leaving the personal property to be divided equally among the next of kin according to law, and leave each devisee take care of the mortgage on the particular farm he received. It would appear that he used clause eighteen designedly to accomplish this purpose. The chan-

cellor properly decreed that effect should be given to testator's intention, and we hold that the construction of clause eighteen adopted in the decree of the circuit court is correct.

For the reasons above stated the decree of the circuit court is hereby affirmed.

*Decree affirmed.*