DOROTHY GRIFFIN *et al.*, Respondents-Appellants, *v.* HAROLD GOULD, Petitioner-Appellee.

First District (2nd Division)  No. 78-1977

Opinion filed May 29, 1979.

Kirkland & Ellis, of Chicago (Donald J. Duffy and Richard A. Lang, of counsel), for appellants.

Frank J. McLoraine and John D. Cooke, both of Chicago, for appellee.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

This appeal is taken from that part of an order directing appellants as co-executors under the will of Benjamin Kulp, deceased, (hereinafter "co-executors") to pay without right of reimbursement from Harold Gould (hereinafter "Gould") that portion of accrued real estate taxes upon certain real property devised to him attributable to the period of time during which either the decedent or his co-executors were in possession.

For the reasons hereinafter stated we reverse and remand with directions.

Benjamin Kulp died a resident of Cook County, Illinois on May 27, 1978. His will, dated October 7, 1975, was admitted to probate and appellants herein were appointed co-executors on June 26, 1978. After decedent devised all of his right, title and interest in the residential real

estate located at 814 Franklin Avenue, River Forest, Illinois, to his nephew, Gould, if living at his death, in article 5 of the will he directed:
"  *  *  *  * that the executors shall provide for payment out of the residue of my probate estate of the following without seeking reimbursement from or charging any person therefor:

(a) My last illness and funeral expenses and the costs of my burial.

(b) All indebtedness owned by me at the time of my death.

(c) All expenses in connection with the administration of my estate.

(d) All valid inheritance, estate, transfer and succession taxes, including interest and penalties thereon, which may become payable by reason of my death*  *  *."

No specific reference is made in the will regarding payment of real estate taxes.

On July 17, 1978, pursuant to section 20—1(c) of the Probate Act of 1975 (Ill. Rev. Stat. 1977, ch. 110½, par. 20—1(c)), the circuit court entered an order granting possession of the subject real estate to Gould, who thereafter petitioned the court, *inter alia*, for entry of an order directing co-executors to pay 1977 and 1978 real estate taxes on the subject property out of the residue of decedent's estate. Co-executors represent said property as having a date-of-death appraised value of $148,500 which passed to Gould unencumbered save for the second installment of 1977 and the entire 1978 real estate taxes, amounting to approximately $7,500.

The order from which this appeal is taken directs, *inter alia*, that co-executors pay as the estate's obligation and without right of reim- bursement from Gould the second installment of 1977 real estate taxes due and the 1978 real estate taxes from January 1 to July 17 of that year, when Gould was placed in possession of the subject property. Real estate taxes for July 17 to December 31 of 1978 and thereafter were held to be Gould's personal obligation. The court acknowledged that it was effectively pro-rating the 1978 taxes based upon the time Gould was granted possession.

■■ An ower of real property on January 1 of a given year is personally liable for the real estate taxes for that year (Ill. Rev. Stat. 1977, ch. 120, par. 508a), said taxes becoming a prior and first lien upon the property in question as of the January 1 date (Ill. Rev. Stat. 1977, ch. 120, par. 697). The parties agree that since decedent was owner of the subject property on January 1 of both 1977 and 1978, he was personally liable for the real estate taxes for both years and that when he died, said liability became a debt of his estate. (*In re Application of County Collector* (1966), 72 Ill. App. 2d 272, 218 N.E.2d 244; *In re Estate of Carlson* (1952), 348 Ill. App.

464, 109 N.E.2d 461.) They further agree that the question for our consideration is whether the deceased under the terms of his will expressly provided for payment of the aforesaid real estate taxes out of the residue of his estate so as to relieve Gould of such payment under section 20—19 of the Probate Act, reading in pertinent part as follows (Ill. Rev. Stat. 1977, ch. 110½, par. 20—19):

> "Except as otherwise expressly provided by decedent's will:
>
> (a) When any real estate * * * subject to an encumbrance * * * is specifically bequeathed * * * the legatee * * * to whom the real estate * * * is given * * * takes it subject to the encumbrance and is not entitled to have the indebtedness paid from other real or personal estate of the decedent."

The term "encumbrance" is defined in the Act thus (Ill. Rev. Stat. 1977, ch. 110½, par. 1—2.07): ·

> " 'Encumbrance' includes mortgage, real estate tax or special assessment, deed of trust, vendor's lien, security agreement and other lien."

The liens established by the 1977 and 1978 real estate taxes thus constituted encumbrances upon the subject property within the statutory definition. See *Merchants National Bank v. Olson* (1975), 27 Ill. App. 3d 432, 325 N.E.2d 633.

Section 20—19 of the Act (formerly Ill. Rev. Stat. 1967, ch. 3, par. 219b) operates in derogation of the common law doctrine of exoneration, which provided that a devisee of real estate mortgaged or otherwise encumbered by a testator in his lifetime was entitled to a discharge of the lien from testator's personal estate unless he directed otherwise in his will. (See *Sutherland v. Harrison* (1877), 86 Ill. 363; *Merchants National Bank.*) This rule was followed in Illinois and elsewhere as a corollary of the common law principle that a decedent's personalty is the primary fund for payment of his debts. (*Watts v. Killian* (1921), 300 Ill. 242, 133 N.E. 295; *Martin v. Martin* (1941), 310 Ill. App. 622, 35 N.E.2d 560; Tyler, *Should the Widow Pay?* 47 Ill. Bar J. 850, 851 (1959).) The adoption of section 18—14 (formerly section 207) of the Probate Act, effective July 1, 1966 (Ill. Rev. Stat. 1977, ch. 110½, par. 18—14, formerly Ill. Rev. Stat. 1965, ch. 3, par. 207), changed this principle, making the real and personal property of a decedent equally chargeable with claims against his estate, expenses of administration, estate and inheritance taxes and legacies without distinction except as otherwise provided in his will. Not mentioned specifically in section 18—14, the viability of the exoneration doctrine was thus left in doubt, to be resolved by the enactment of section 20—19 in 1967. See generally 4 W. James, Illinois Probate Law and Practice 235-37 (A. Fleming Supp. 1975).

Abolition of the exoneration doctrine in Illinois was further to be anticipated as a result of widespread dissatisfaction with the rule among practictioners and commentators, particularly in its failure to follow a testator's probable intent. As one commentator remarked (Fleming, *Will Drafting Problems Posed by Mortgage Indebtedness*, 48 Ill. Bar J. 846, 848 (1960)):

> " * * * this rule of exoneration thwarts intention more often than it fulfills it. One surmises that many, if not most testators, if they thought about the problem, would have said the * * * devisee, should take the property with whatever encumbrance there might be on it, and assume the debt."

Another also found exoneration at cross purposes with a testator's likely intentions where no specific direction as to encumbrances on devised realty has been made (Tyler, *Should the Widow Pay?* 47 Ill. Bar J. 850, 852-53 (1959)):

> "* * * It seems probable that a testator would believe that an encumbrance followed his devise. It would be more normal to expect him to comment if he wished it to be otherwise. The inequitable case * * * is more likely to occur where the devise is exonerated."

Gould contends that decedent's will expressly directs payment of the real estate taxes out of the residue of the estate, in particular by the provision that "all indebtedness" is to be paid "without seeking reimbursement from or charging any person therefor * * *," in conformity with the statute. The latter phrase, being dependent upon what is covered by the term "all indebtedness," is relevant here only insofar as that term may include the real estate taxes in issue. In the absence of Illinois authority directly on point, Gould relies upon *Succession of Waterman* (La. 1974), 298 So. 2d 731, wherein the Louisiana Supreme Court held that a testamentary direction to pay from decedent's residuary estate " "* * * all my just debts * * *' " included a debt secured by a mortgage on a residence bequeathed to a special legatee (298 So. 2d 731, 732). The statute there construed provided for nonexoneration of mortgaged property by the estate's representative " '* * * unless he be required to [remove the encumbrance] by an express disposition of the testator' " (298 So. 2d 731, 732). Gould refers in particular to the court's conclusion that since unsecured debts are taken from the residuary estate by operation of law, the quoted provision added nothing to the will unless it included secured debts, in particular the subject mortgage. By characterizing the issue to be determined as whether or not secured debts generally were covered by the language of the will under the state, the Lousisana court overlooked the question

of interpretation posed by the term "express disposition," apparently assuming that if the language of the will was sufficiently broad to cover the general category of secured debts, it expressly disposed of the encumbrance on the subject property. *Waterman*, therefore, is of little precedential value in this regard.

Courts of other jurisdictions have taken a different position in interpreting comparable laws and will provisions. In *Ring v. Wooley* (1913), 155 App. Div. 817, 820, 140 N.Y.S. 648, 650, the court observed:

> "* * * section 250 of the Real Property Law [citations] provides that, where real property is devised the devisee must satisfy and discharge any mortgage thereon unless there be *express direction* in the will of the testator that such mortgage be paid from his estate. The only direction in the will * * * was the ordinary one that debts and funeral expenses be paid. *This is not an express direction to pay an existing mortgage upon such real property as should be devised.* [Citations.] The plaintiff, therefore, by accepting the devise became primarily liable to pay and satisfy the mortgage * * *." (Emphasis added.)

(Accord, *Gates v. Rice* (1928), 320 Mo. 580, 8 S.W.2d 614; *Meyer v. Cahen* (1888), 111 N.Y. 270, 18 N.E. 852; *In re Dell's Estate* (1935), 154 Misc. 216, 276 N.Y.S. 960.) In *Fidelity Union Trust Co. v. Laise* (1948), 142 N.J. Eq. 366, 375, 60 A.2d 250, 256, the court construed a New Jersey statute providing for nonexoneration of real estate subject to a mortgage "* * * unless the will of the testator shall expressly or impliedly direct that the mortgage be otherwise paid'." Noting that the subject will was silent as to the payment of mortgages, the court held that the statute imposed liability on a devisee of real property subject to a mortgage debt and found a general direction in the will to executors to pay the debts and further expenses of the testator insufficient to bring the devise within the quoted exception.

Gould contends that *Fidelity* is distinguishable because the will considered there did not refer to "all" debts as the one before us does. In *Caruthers v. Buscher* (1978), 38 Md. App. 661, 382 A.2d 608, however, a Maryland law providing for nonexoneration " '[u]nless a contrary intent is expressly indicated in the will, * * *' " was construed as applying to a devise under a will despite the testator's general direction to pay " "* * * all of my just debts,' " since the direction failed to express the requisite contrary intent. (38 Md. App. 661, ___, ___, 382 A.2d 608, 612, 610.) (Emphasis added.) Gould finds *Caruthers* distinguishable because the court there was bound to follow strict interpretation guides adopted by the relevant Maryland statute and absent from the Illinois act. Our reading of that case reveals no such constraint.

Illinois comment on section 20—19 is illuminating in this regard. In 4 W. James, Illinois Probate Law & Practice 242 (A. Fleming Supp. 1975), it is noted:

"A question suggested by the statutory words [of what is now section 20—19] is whether a general direction to the legal representative to pay the debts of the decedent constitutes an 'express provision' to the contrary. The majority rule appears to be that a general direction to pay debts is merely declaratory of the law and does not of itself indicate an affirmative or express intent to pay debts secured by a lien or encumbrance."

Raymond, *1967 Legislative Changes Affecting Probate & Trust Law*, 56 Ill. Bar J. 208, 215 (1967), is to the same effect:

"The new statute requires an express provision in the decedent's will to overcome the effect of the statute and a mere statement to pay the testator's debts will not be sufficient to overcome it."

Although we find no prior judicial interpretation of such a general testamentary direction in the context of section 20—19, the supreme court remarked in *Kelly v. Dyer* (1935), 359 Ill. 46, 194 N.E. 255 that a testatrix's direction in her will to pay her debts and funeral expenses "* * * merely stated what the law requires to be done. The expression in the will adds nothing to the law." (359 Ill. 46, 56.) Occurring in a different context, the *Kelly* language nevertheless suggests an approach consonant with that adopted in *Caruthers* and *Fidelity*, one recommended by the foregoing authorities and which would discourage an excessively expansive interpretation of that expression in the present case.

■■ Co-executors argue that in order to "expressly provide" for exoneration of real estate tax liability under section 20—19, the testator would have had to use words that contemplated the statute in shifting accrued real estate taxes to the estate, relying upon *Funkhouser v. Dorfmeier* (1963), 95 Ohio L. Abs. 140, 202 N.E.2d 226, 31 Ohio Op. 2d 42. We need not go so far in coming to our conclusion that the present provision under the will does not expressly provide for shifting taxes to the estate as required by section 20—19; something more than the stock phrase "all indebtedness owed by me at the time of my death," however, is required in order to effectuate that shift.

■■ Gould suggests that the term "all" must be regarded as including the real estate taxes in order to avoid a construction rendering the word meaningless or mere surplusage, based on *Waterman*. The will must be considered in its entirety to determine testator's intent and, to the extent possible, that construction should be adopted which will give effect to all the language employed. (*Kiesling v. White* (1952), 411 Ill. 493, 499, 104 N.E.2d 291; *Glaser v. Chicago Title & Trust Co.* (1946), 393 Ill. 447, 66 N.E.2d 410.) No technical rule of construction, however, will be

permitted to interfere with ascertaining testator's real intention. (*Kiesling*; *Papa v. Papa* (1941), 377 Ill. 316, 36 N.E.2d 717; *Pollock v. Pollock* (1927), 328 Ill. 179, 159 N.E. 305; *Molner v. Silbert* (1956), 8 Ill. App. 2d 388, 392, 132 N.E.2d 36.) Accordingly, "all" is of little significance in context of the entire will as affected by section 20—19. In light of the history of exoneration as reviewed hereinabove and the record before us, it is unlikely that testator's general direction here to pay "all indebtedness" was intended as an express provision to satisfy the 1977 and 1978 real estate taxes out of his estate in contravention of the rule embodied in section 20—19, and we find that it does not. To hold otherwise would have the effect of introducing exoneration into a statute enacted for the very purpose of avoiding its general application.

For the foregoing reasons, that part of the August 30, 1978, order with respect to the issue raised by this appeal is reversed and remanded with directions for entry of an order finding the subject real estate taxes in their entirety to be the obligation of Gould rather than the estate.

Reversed and remanded.

STAMOS, P. J., and DOWNING, J., concur.