NOTICE
Decision filed 10/02/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 241010

NO. 5-24-1010

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| DEBRA A. TIEDEMANN, as Trustee of The Edward E. Tiedemann Declaration of Trust, Dated January 30, 2014, | ) ) ) ) | Appeal from the Circuit Court of Piatt County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 24-CH-2 |
| BRENT E. TIEDEMANN and KEVIN A. TIEDEMANN, | ) ) ) | Honorable Dana C. Rhoades, |
| Defendants-Appellees. | ) | Judge, presiding. |

PRESIDING JUSTICE McHANEY delivered the judgment of the court, with opinion.
Justices Moore and Sholar concurred in the judgment and opinion.

**OPINION**

¶ 1     Edward E. Tiedemann (Settlor) executed the "Edward E. Tiedemann Declaration of Trust" (Trust) on January 30, 2014. He was the initial trustee of the Trust, and he named his wife, Debra A. Tiedemann (Debra) as the successor trustee of his Trust. The beneficiaries of the Trust were Debra, and his two sons, Brent E. Tidemann and Kevin A. Tiedemann (defendants). In 2022, the Settlor and Debra obtained a loan for $862,400 to purchase land in St. Clair County. The purchase was secured by a mortgage agreement dated June 30, 2022. Following the Settler's death on September 7, 2023, ownership of the Belleville property passed to Debra as a joint tenant with right of survivorship. Following the Settlor's death, no payments were made on the loan, and the financial institution sent a notice of default, stating its intent to foreclose if the default was not

1

remedied. Thereafter, Debra filed her petition with the trial court asking for "aid and direction" pursuant to the Illinois Trust Code (Code) (760 ILCS 3/101 *et seq.* (West 2022)) and sought to use trust assets to pay off the bank loan. The defendants responsively argued that Debra could not use trust assets to pay off the loan, as doing so would be contrary to the Probate Act of 1975 (Act) (755 ILCS 5/1-1 *et seq.* (West 2022)). The trial court entered its order finding in the defendants' favor on August 26, 2024. Debra timely appealed from that order. For the following reasons, we affirm.

¶ 2                                    I. Background

¶ 3     On January 30, 2014, the date that the Settlor executed his Trust, he also executed his final will. The Trust included tracts of real estate described in an attached and incorporated schedule. The two tracts of Trust real estate were in St. Clair County and were labeled as tract No. 1 and tract No. 2. The Trust was also defined to include any other property later added by the Settlor, together with the proceeds thereof. At an unspecified date, a third St. Clair County tract was transferred into the Trust.

¶ 4     Article 10 of the Trust provides that upon the Settlor's death:

"[Debra] shall pay from the Trust Estate, directly or through my personal representative, without apportionment or reimbursement, all of my just debts, including the expenses of my last illness and funeral, all expenses of administration of property wherever situated, passing under my Will or this [Trust] or otherwise, and all estate inheritance, transfer and succession taxes which become due by reason of my death ***."

¶ 5     On June 30, 2022, the Settlor and First Federal Savings Bank of Mascoutah (Bank) executed a promissory note and a mortgage for $862,400 to purchase the Rentchler Station Road property in St. Clair County. The Settlor signed the promissory note and the Settlor and Debra

2

both signed the mortgage. The promissory note was secured by a mortgage on four properties in St. Clair County. Three of the properties were within the Trust. The fourth property, the Rentchler Station Road property was not transferred into the Trust before the Settlor died. The Settlor also signed an assignment of rents to the four St. Clair County properties to the Bank "TO SECURE (1) PAYMENT OF THE INDETEDNESS AND (2) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF BORROWER AND GRANTOR UNDER THE NOTE, THIS ASSIGNMENT, AND THE RELATED DOCUMENTS." The Bank had the sole discretion as to application of the rents, but any rents received by the Bank that were not applied to the costs and expenses the Bank incurred in connection with the properties would be applied to the loan.

¶ 6      The Rentchler Station Road property was titled in the Settlor and Debra's joint tenancy with right of survivorship. Upon the Settlor's death on September 7, 2023, ownership of the Rentchler Station Road property passed by operation of law to Debra through her interest as the property's joint tenant with right of survivorship. Upon the Settlor's death, Debra also became the trustee of the Trust.

¶ 7      The record does not indicate if Debra made any mortgage payments on the Rentchler Station Road property loan after the Settlor's death. However, in January 2024, the Bank sent its notification that both the promissory note and the mortgage were in default, stating that the Bank intended to pursue foreclosure on the four properties if the default was not remedied. The amount of outstanding debt was then $858,476.08.

¶ 8      Debra's petition asked the trial court for aid and direction pursuant to section 201 of the Code (760 ILCS 3/201 (West 2022)). She stated that the Trust contained a provision directing her, as trustee, to "pay from the Trust Estate *** all of my just debts." Debra indicated that the only outstanding debts were the outstanding balance on the Rentchler Station Road property note of

3

$858,476.08, and an outstanding balance on a tractor loan of $22,978.61. She stated that she could avoid foreclosure by paying off the promissory note with assets held by the Trust. At the time she filed her petition, the only assets in the Trust were the three properties, but she stated that based upon the Settlor's pour-over will, the Settlor's other assets, excluding the Rentchler Station Road property, would pour into the Trust after probate proceedings. She asked the trial court to provide aid and direction on how she, as trustee, should proceed with the payment of the Settlor's debts.

¶ 9 On July 3, 2024, the defendants filed their response to Debra's petition. The defendants agreed that Debra was a beneficiary of the Trust, particularly with respect to the marital domicile shared as of Settlor's death and that they were beneficiaries of the balance of the Trust, to be distributed equally. They disputed Debra's claim that the loan on the Rentchler Station Road property should be satisfied by Trust assets. The defendants alleged that three of the four St. Clair County properties were Trust assets, but the fourth property—the Rentchler Station Road property, consisting of 61.6 acres—had been titled jointly with right of survivorship by the Settlor and Debra alone. They argued that using Trust assets to pay the indebtedness on the property would be at the defendants' detriment and would unjustly enrich Debra. The defendants cited section 20-19 of the Act (755 ILCS 5/20-19 (West 2022)) to support their argument.

¶ 10 The defendants asked the trial court to remove Debra as the trustee because (1) she was suggesting that this personal debt should be paid from the Trust; (2) she was prioritizing her personal interests over her Trust duties and the well-being of the Trust beneficiaries; (3) she had received rental payments and income that were not placed into the Trust, and she had not reported the use of such funds to the defendants; and (4) she had failed by commission and omission to properly carry out the trustee's duties of accounting. The defendants asked the court to remove her as the acting trustee, and to replace her with the successor trustee, Brent E. Tiedemann.

4

¶ 11    On July 31, 2024, the trial court held a hearing on Debra's petition and the defendants' response. The court entered its order on August 26, 2024. In its order, the court noted that the Trust provided that Debra could reside in the marital home for her lifetime with conditions and that the marital home at the time of the Settlor's death was in Monticello, Illinois. The court also noted that the Trust provided general provisions for the payment of the Settlor's debts and expenses. The court took judicial notice of the Settlor's will and noted that it was a pour-over will with a few specific tangible personal property bequests, with the remainder pouring into the Trust.

¶ 12    The trial court noted that the Settlor signed a promissory note to the Bank individually and not in his capacity as trustee of the Trust on June 30, 2022, for $862,400. Those funds were used to purchase a 61.6-acre parcel on Rentchler Station Road in St. Clair County. The mortgage dated the same date was signed by both Settlor and Debra. Three additional parcels of land were included with the Rentchler Station Road parcel as collateral to secure the promissory note.

¶ 13    The trial court found that section 20-19 of the Act was applicable to the transfer of the Rentchler Station Road property and to the Trust document. The court noted that the property was encumbered; that section 20-19 of the Act included all transfers of encumbered real estate transferred by operation of law pursuant to joint tenancy; and the Act also applied to nontestamentary instruments, like a trust. The court determined that the Trust language about payment of "just debts" was a general direction to the trustee to pay the Settlor's expenses of last illness, administrative expenses, and all estate, inheritance, and transfer taxes. The clause did not contain specific language "expressing the Settlor's intent that the Trust Estate shall pay or assumes the liability for encumbered real estate that passes upon his death through a right of survivorship or another non-testamentary instrument."

5

¶ 14 Additionally, the trial court noted that the Settlor did not execute a codicil to his will expressing his intent that section 20-19 of the Act should not apply and that the Trust shall pay the outstanding encumbrance upon the Rentchler Station Road property. The court concluded that the law presumed that the Settlor "understood that his spouse would receive the entire interest in the Rentchler Station Road property subject to the encumbrance, at the time of his death." In support, the court noted that, although the Trust granted Debra a life estate in the marital residence subject to specific conditions, the Trust made Debra personally liable for "all monthly mortgage payments, costs and expenses incident to the use, debt service, maintenance, and protection thereof, and real estate taxes and insurance." The court stated: "This language seems to suggest that the Settlor's intent was for Section 20-19 to apply to any specific bequests or outright transfer of encumbered real property." Overall, the trial court concluded that the Settlor had no intent to shift the Rentchler Station Road property debt owed to the Bank to the Trust. "The law presumes that Edward Tiedemann knew the law when he executed these documents, that he understood the application of Section 20-19 to the Rentchler property, and that he understood that his spouse would receive the entire interest in the Rentchler property subject to the encumbrance, at the time of his death."

¶ 15 The trial court found that section 20-19 of the Act did not apply to the tractor debt, as it was personal property, and therefore, the Trust was responsible for paying that debt. The trial court also denied the defendants' request to remove Debra as the trustee because the official accounting was not due until September 2024.

¶ 16 Debra appeals from the August 26, 2024, order.

¶ 17                                  II. Analysis

¶ 18 On appeal, Debra contends that the trial court erred both in finding that section 20-19 of the Act applied to the payment of the Settlor's debts from the Trust, and in finding that she, as

6

trustee, could not pay off the promissory note with Trust assets. As the issues in this case involve the trial court's interpretation of statutory law, our review is *de novo. Central Illinois Light Co. v. Department of Revenue*, 335 Ill. App. 3d 412, 415 (2002).

¶ 19 When we interpret statutory language, our main objective is to determine and give effect to the legislature's intent. *Westberg v. Barcroft*, 2022 IL App (2d) 210543, ¶ 23 (citing *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, ¶ 24). "The most reliable indicator of legislative intent is the statutory language, given its plain and ordinary meaning." *Id.* "Each word, clause, and sentence of a statute must be given a reasonable construction, and no term should be rendered superfluous." *Id.* (citing *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 21). Moreover, a court cannot deviate from the statute's plain and unambiguous language by "reading into the statute exceptions, limitations, or conditions not expressed therein." *Id.* (citing *Rosenbach*, 2019 IL 123186, ¶ 24).

¶ 20 There is no question that article 10 of the Trust directs Debra to pay all "just debts" of the Settlor from the Trust estate. The defendants acknowledge that the promissory note is Settlor's debt. However, the defendants dispute that the promissory note qualifies as a "just debt" and note that section 20-19 of the Act expressly ended the common law doctrine of exoneration. Debra claims that the trial court misinterpreted section 20-19 of the Act.

¶ 21 The common law doctrine of exoneration provided that a devisee of encumbered real estate was entitled to a discharge of the encumbrance from the decedent's personal estate unless otherwise directed. *Griffin v. Gould*, 72 Ill. App. 3d 747, 749 (1979). This rule was followed in Illinois "as a corollary of the common law principle that a decedent's personalty is the primary fund for payment of his debts." *Id.* (citing *Watts v. Killian*, 300 Ill. 242 (1921); *Martin v. Martin*, 310 Ill. App. 622 (1941)).

7

¶ 22 Historically, the exoneration question was debated in legal circles. Noting that exoneration had been statutorily disposed of in New York in 1850 and in England in 1854, the question of whether Illinois should follow suit was deemed problematic, and thus, "[i]f the testator wants his will to reflect his wishes, what he thinks the law to be, then he must explicitly burden the devised realty with its mortgage" and "[i]t seems probable that a testator would believe that an encumbrance followed his devise. It would be more normal to expect him to comment if he wished it to be otherwise." Lloyd J. Tyler Jr., *Should the Widow Pay?*, 47 Ill. B.J. 850, 852-53 (1959). "The inequitable case, the hard case ***, is more likely to occur where the devise is exonerated." *Id.* Another author suggested that the doctrine of exoneration "thwarts intention more often than it fulfills it" and that "many, if not most testators, if they thought about the problem, would have said the *** devisee, should take the property with whatever encumbrance there might be on it, and assume the debt." Austin Fleming, *Will Drafting Problems Posed by Mortgage Indebtedness*, 48 Ill. B.J. 846, 848 (1960).

¶ 23 The predecessor to section 20-19 of the Act took effect in 1967 (1967 Ill. Laws 2012 (§ 219b)) and eliminated the doctrine of exoneration, "[e]xcept as otherwise expressly provided by decedent's will." 755 ILCS 5/20-19 (West 2022). After the predecessor to section 20-19 took effect, legal scholars discussed application of the statutory language:

> "A question suggested by the statutory words [of what is now section 20-19] is whether a general direction to the legal representative to pay the debts of the decedent constitutes an 'express provision' to the contrary. The majority rule appears to be that a general direction to pay debts is merely declaratory of the law and does not of itself indicate an affirmative or express intent to pay debts secured by a lien or encumbrance." 4 William M. James, Illinois Probate Law and Practice § 219b.4, at 242 (Austin Fleming Supp. 1975).

8

Another author stated: "The new statute requires an express provision in the decedent's will to overcome the effect of the statute and a mere statement to pay the testator's debts will not be sufficient to overcome it." Spencer H. Raymond, *1967 Legislative Changes Affecting Probate and Trust Law*, 56 Ill. B.J. 208, 215 (1967).

¶ 24 We review section 20-19 of the Act to determine if it applies to the outstanding indebtedness on the Rentchler Station Road property. Section 20-19(a) expressly provides: "When any real estate *** subject to an encumbrance *** passes by joint tenancy with right of survivorship *** the *** surviving tenant *** to whom the real estate *** passes, takes it subject to the encumbrance ***." 755 ILCS 5/20-19(a) (West 2022). The Act defines an encumbrance to include a mortgage. *Id.* § 1-2.07. Thus, section 20-19 unquestionably applies to the transfer of the Rentchler Station Road property under the statute's express terms.

¶ 25 The question that remains is whether Debra, as the undisputed owner of this property with its monetary encumbrance, can use Trust assets to pay off the encumbrance. Debra argues that the answer to this question lies within section 20-19 of the Act and contends that a decedent's "real or personal estate" is different from a decedent's "trust estate," and because she was seeking payment of the promissory note with "trust" assets versus "real or personal estate" assets, the trial court's order was erroneous. She cites no legal authority for this proposition, other than to state that there is no comparable statutory language in the Code (760 ILCS 3/101 *et seq.* (West 2022)).

¶ 26 We start with legal definitions of the terms at issue. The terms "real or personal estate," "real and personal estate," and "trust estate" are not defined in the Act or the Code. The term "real or personal estate" was used in the Act 9 times,[1] and the term, "real and personal estate" was used

---

[1]The term "real or personal estate" can be found in sections 2-5, 4-6, 11-6, 11a-7, 13-4, 14-1, 20-19, 22-4, and 24-3 of the Act. See 755 ILCS 5/2-5, 4-6, 11-6, 11a-7, 13-4, 14-1, 20-19, 22-4, 24-3 (West 2022).

16 times in the Act.[2] The term "personal estate" is defined as "personal property" as follows: "Any movable or intangible thing that is subject to ownership and not classified as real property." Black's Law Dictionary (12th ed. 2024) (directed to "personal property (1) under PROPERTY"). The term "real estate" is defined as "real property" as follows: "Land and anything growing on, attached to, or erected on it, excluding anything that may be severed without injury to the land." Black's Law Dictionary (12th ed. 2024) (directed to "real property under PROPERTY"). The term "trust estate" is defined as "corpus" as follows: "[t]he property for which a trustee is responsible; the trust principal.—Also termed *res*; trust estate; trust fund; trust property; trust *res*; trust." Black's Law Dictionary (12th ed. 2024) (directed to "corpus (1)").

¶ 27    Using rules of statutory construction by giving the words their plain and ordinary meaning (*Westberg*, 2022 IL App (2d) 210543, ¶ 23 (citing *Rosenbach*, 2019 IL 123186, ¶ 24)), we find that the terms real and/or personal estate as used in the Act simply mean real property and/or personal property. Reasonably interpreting this clause, we conclude that use of these terms, as they have been legally defined, simply denotes the distinction between realty and personal assets. Moreover, the term "trust estate" simply means the trust property. See *id.* (citing *1010 Lake Shore Ass'n*, 2015 IL 118372, ¶ 21).

¶ 28    We acknowledge that cases interpreting section 20-19's prohibition of paying off encumbrances have only involved real estate taxes and not a survivor's attempt to pay off a mortgage or promissory note. Nonetheless, we find that the analysis in these real estate taxes cases is helpful.

---

[2]The term "real and personal estate" can be found in sections 2-1, 2-2, 4-4, 4-13, 4-14, 6-2, 9-4, 9-8, 10-2, 10-4, 14-1, 18-14, 24-1, 24-3, 24-7, and 28-6 of the Act See 755 ILCS 5/2-1, 2-2, 4-4, 4-13, 4-14, 6-2, 9-4, 9-8, 10-2, 10-4, 14-1, 18-14, 24-1, 24-3, 24-7, 28-6 (West 2022).

¶ 29    In *Gould*, 72 Ill. App. 3d at 750, Gould claimed that the will's provision that " 'all indebtedness' " is to be paid, necessarily included real estate taxes. Gould argued that the word, " 'all' " must "be regarded as including the real estate taxes in order to avoid a construction rendering the word meaningless or mere surplusage." *Id.* at 752. The appellate court stated: "The will must be considered in its entirety to determine testator's intent and, to the extent possible, that construction should be adopted which will give effect to all the language employed." *Id.* (citing *Kiesling v. White*, 411 Ill. 493, 499 (1952); *Glaser v. Chicago Title & Trust Co.*, 393 Ill. 447, 457 (1946)). The appellate court declined to reach a conclusion that " 'all indebtedness' " included real estate taxes, noting that given the history of exoneration, and section 20-19 of the Act, that phrase did not authorize the payment of real estate taxes from the estate as that would be in "contravention of the rule embodied in section 20-19." *Id.* at 753. "To hold otherwise would have the effect of introducing exoneration into a statute enacted for the very purpose of avoiding its general application." *Id.*; see *In re Estate of Matthews*, 409 Ill. App. 3d 780, 785-86 (2011) (holding that the decedent's direction to the executor " '[t]o pay all governmental charges, taxes or liens imposed upon my estate or upon the interest of any and all beneficiaries hereunder by any law of any state, foreign state or federal government, relating to the transfer of property by descent or devise' " did not constitute a specific direction for the estate to assume responsibility for the real estate taxes on the decedent's realty, and instead concerned the payment of estate and inheritance taxes); *Merchants National Bank of Aurora v. Olson*, 27 Ill. App. 3d 432, 433-34 (1975) (applying section 20-19 of the Act and stating that the statute abrogates a surviving joint tenant's rights "to have liens on the real estate paid in whole or in part out of the decedent's probate estate," but concluding that the bank—who only had a lien against the husband, and not the spouse—lost its lien upon the husband's death); *In re Estate of Light*, 385 Ill. App. 3d 196, 197, 201 (2008) (where the decedent's

11

will directed the executor to pay " 'all taxes assessed or imposed against [her] estate or against any beneficiary of [her] estate,' " the court found that real estate taxes were not included because the taxes were assessed and imposed against the real estate, not the decedent's estate).

¶ 30    The promissory note and mortgage represent the Bank's encumbrance against the property. Debra's request to use Trust assets to pay off the loan on the property at issue is clearly contrary to the express wording of section 20-19 of the Act. See 755 ILCS 5/20-19(a) (West 2022). As Illinois law prohibits exoneration of the debt on encumbered assets, Debra, as the sole owner, is solely responsible for the outstanding debt. We note that the Settlor could have expressly authorized use of the Trust assets to pay off this encumbrance, but he did not. There is no catch-all provision allowing exoneration of debts on encumbered assets in his Trust. Moreover, he could have included this type of provision in his will or in a codicil to his will. He did not. As the first sentence of section 20-19 of the Act states: "Except as otherwise provided by decedent's will," there is no exoneration of encumbered assets in real estate. *Id.* § 20-19.

¶ 31    The provisions of the Trust provide additional support for the conclusion that Settlor never intended his trust assets to be used to pay off the encumbrance on the Rentchler Station Road property. "This court's primary concern in construing a trust is to discover the settlor's intent, which the court will effectuate if it is not contrary to law or public policy." *Estate of Mendelson v. Mendelson*, 2016 IL App (2d) 150084, ¶ 25 (citing *First National Bank of Chicago v. Canton Council of Campfire Girls, Inc.*, 85 Ill. 2d 507, 513 (1981)). "The settlor's intent is determined as of the time the instrument is executed." *Id.* To ascertain the settlor's intent, we must consider the plain and ordinary meaning of the words used by the settlor and must also consider the entire document. *Id.* (citing *First National Bank of Chicago*, 85 Ill. 2d at 514).

¶ 32    In the Settlor's trust, he made provisions to allow Debra to have the marital home in Monticello "as her sole property" if they were living in that home when he died. He makes no provisions about payment of real estate taxes, insurance, maintenance, or any other costs associated with home ownership. Notably, Debra did not seek guidance from the court on who was responsible for said expenses.

¶ 33    As Debra was living in the Monticello home when the Settlor died, alternative Trust provisions for Debra's housing after his death are inapplicable. However, we find that the alternative provisions provide insight into the Settlor's intentions. If they had been living anywhere but the Monticello home, the Settlor provided that while Debra could live there for her lifetime— so long as she did not remarry or cohabitate with another person on a conjugal basis—she was expressly responsible for "costs and expenses incident to the use, debt service, maintenance and protection thereof, including the cost of monthly mortgage payments, if any, insurance and the taxes thereon." Additionally, upon either Debra's "death, remarriage, cohabitation, abandonment of said property, or failure to pay the aforesaid costs and expenses incident to the use thereof, or at my death, if my wife predeceases me, said property shall be distributed per stirpes to my descendants then surviving."

¶ 34    Article four of the Trust also capped the amount Debra could receive for the "property." It is not clear what "the property" is as it was not defined, but it is not characterized as a marital domicile as used in other paragraphs in article four. The provision states:

"If the property which my wife and I own jointly *** does not have a *** fair market value, less mortgage or security interest debt *** of at least $250,000.00 at the date of my death, my successor Trustee shall distribute next from the Trust Estate to my wife an amount

13

equal to the difference between the \*\*\* [fair] market value of said jointly owned property and the sum of $250,000.00 \*\*\*."

¶ 35    We conclude that the Settlor's intent was to provide housing for Debra so long as she did not remarry or cohabitate with a partner, that she was solely responsible for all costs and expenses associated with this housing, and that she was entitled to a certain amount of money for "the property." The balance of the trust was to be distributed to the Settlor's two sons, the defendants. Outside of the trust, Debra received the Rentchler Station Road property as the surviving joint tenant subject to the amount owed to the Bank. We find no basis in law or in the express terms of the Settlor's Trust and/or his will that Debra was entitled to pay off the encumbrance on the Rentchler Station Road property with Trust assets.

¶ 36                            III. Conclusion

¶ 37    For the foregoing reasons, we affirm the order of the Piatt County circuit court.


¶ 38    Affirmed.

---

### *Tiedemann v. Tiedemann*, 2025 IL App (5th) 241010

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Piatt County, No. 24-CH-2; the Hon. Dana C. Rhoades, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Michael J. Brusatte, David C. Thies, and Mia O. Hernandez, of Webber & Thies, P.C., of Champaign, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | David A. Rolf and Andrew T. Jarmer, of Sorling Northrup, of Springfield, for appellees. |

---